BUNNELL and others *against* READ and another :

IN ERROR.

Where a contract was made between *H*, an individual living in *New York,* and *P*, a manufacturing company in this state, that *P* should convey to *H*, all the real estate and privileges used and occupied by *P*, in working the mills of the company, situated in the town of *B ;* for which *H* promised to pay to *P* a certain sum of money, and to *D*, another sum ; *H* performed on his part ; and to carry this agreement into effect, on the part of *P*, he gave a deed of the property, describing it as situated in *B ;* a portion of the property was in fact situated in the adjoining town of *T*, separated from the residue, only by an ideal township line, having been originally purchased and used for the purpose of a reservoir of water for the mills connected therewith, and necessary for their profitable enjoyment ; on a bill in chancery, brought by a party claiming under *H*, for a legal title to the estate in *T*, it was held, 1. that whether the inaccuracy in the deed, was the result of fraud or mistake, the plaintiff was entitled to the relief sought ; 2. that an interest vested in *H*, creating in him a trust, which was assignable and descendible, and which could be taken on execution.

Where *W*, the grantee of *D*, in such case, claimed, that his deed was prior in time to the plaintiffs' lien, and that when he received it, he had *no notice* of such lien ; it was held, that if he would avail himself of his purchase and want of notice, it was incumbent upon him, in plea or answer, to aver those facts, and set out the consideration of his purchase.

After a hearing on the merits and a decree passed, it is quite too late to except to the bill for want of proper parties.

*Qu.* Whether it is necessary at all, to make a person, who has formerly had an interest in property, but which has since been wholly taken and set off on execution, a party to the suit ?

THIS was a bill in chancery, brought by *Read* and another against *W. R. Bunnell* and the *Pequonnuck Manufacturing Company,* praying for the correction of a deed, under which the plaintiffs claimed title in equity.

The facts in the case were these. On the 5th of *Novem-*

*ber,* 1846, the *Pequonnuck Manufacturing Company* was
justly indebted to *Hubbell, Thatcher & Green,* copartners, of the city of *New York,* in the sum of sixty-five thousand dollars, for a large portion of which they had mortgages on most of the real and personal estate of said manufacturing company. The same manufacturing company was, at that time, also indebted to *Diantha Bunnell* of *Bridgeport,* in the sum of about thirty thousand dollars, for which she held a mortgage on the same property, with other securities. This company being then in embarrassed circumstances, uniting with Mrs. *Bunnell,* proposed to *Hubbell, Thatcher & Green,* to convey to them to all their interest in certain personal estate, and also in all the real estate and privileges used and occupied, by the company, in working their mills, commonly called the *Pequonnuck Mills,* situated in *Bridgeport,* and that *H. T. & G.* should pay to Mrs. *Bunnell* ten thousand dollars.

This proposition was accepted by *H. T. & G.;* and thereupon, said company and Mrs. *Bunnell* promised to convey the premises to *H. T. & G.;* and in pursuance of such agreement, said company and Mrs. *Bunnell* executed and delivered to said firm, deeds, purporting to convey to them, the real estate of said company in *Bridgeport.* Now, in fact, a portion of the real estate of said company lay in the town of *Trumbull,* standing, some, in the name of said company, and some in the name of Mrs. *Bunnell.* This real estate was purchased and held, by said company, for the purpose of ponding the water and using it, in connexion with, and for the purposes of, said mills; all which was known to said company and to Mrs *Bunnell,* but was not known to *H. T. & G.*

The real estate aforesaid consisted of a piece of land, with a pond thereon, called "the upper pond."

It was the true intent and meaning of the parties, that the whole of said real estate should be conveyed to said firm; but the deeds of conveyance were drawn under the direction of the defendants, and by mistake, so as not to embrace the real estate in *Trumbull;* said *H. T. & G.,* ignorant of the situation of said real estate, and supposing that all the real estate of the defendants connected with said mills, was embraced in the deeds, received them, in full sat-

isfaction of the indebtedness of said company to them, and complied with the agreement on their part. The privilege of ponding the water on said real estate in *Trumbull*, is necessary to the profitable enjoyment and use of the mills.

On the 8th day of *December*, 1846, *H. T. & G.* were indebted to the plaintiffs in the sum of four thousand dollars and upwards, when the plaintiffs commenced a suit against them, returnable to the superior court, by which they attached said real estate in *Trumbull*, and all the right, title and interest of *H. T. & G.* therein; and having afterwards obtained judgment in said suit, for the sum of four thousand, eight hundred and fifty-seven dollars, sixty cents, damages, they had the execution issued on the judgment in said suit levied on said real estate in the town of *Trumbull*, and duly set off to the plaintiffs, whereby all the right, title and interest of *H. T. & G.* became vested in the plaintiffs. Afterwards, on the 1st day of *May*, 1848, Mrs. *Bunnell*, by her deed of that date released to *William R. Bunnell*, of *Bridgeport*, all her right, title and interest in the above-mentioned premises; by reason of which deed he now claims to own them.

After finding these facts, the court decreed, that the legal title to the piece of land, with a pond thereon, called "the upper pond," described in the bill, be vested in the plaintiffs, and they were decreed to be the owners of said piece of land, as their estate in fee simple.

The defendants thereupon filed their motion in error, and brought the record before this court for revision.

*Hawley*, for the plaintiffs in error, contended, 1. That no contract for the *Trumbull* land appears to have been made; as it is shown in the bill, that *Hubbell, Thatcher & Green* had *no knowledge* that *any such property belonged* to the *Pequonnuck Co.*, or to Mrs. *Bunnell*. They, consequently, could not have *contemplated* it in their bargain.

2. That it does not appear *what part* of the lands stood in the name of the *Pequonnuck Co.*, nor *what part* in the name of Mrs. *Bunnell*, nor what *interest* or *estate either had in any part of it;* yet the decree vests an estate in *fee simple* in the plaintiffs. The bill should show facts warranting such a decree, and what part each defendant *owned in the*

*legal title*, that the precise effect of the decree on *each party*, and especially on *Wm. R. Bunnell*, should appear.

3. That *Wm. R. Bunnell* had no *notice*, that the *Pequonnuck Co.* had any *estate or interest* in the lands Mrs. *Bunnell* conveyed to him, nor that *H. T. & G.* had any claim by contract to the lands, or any part of them. He stands before the court, as a purchaser, for *full consideration*, without *notice*.

The plaintiffs cannot have relief against him, unless he bought with *notice*, or w*ithout consideration*. This can never be *presumed*, especially against a defendant. The plaintiffs, to entitle themselves to a decree against the defendants, *must show* that such was the case. They take the *onus*, and their bill *must show* it.

4. That *H. T. & G.* had no estate or interest, which could be taken by *levy of execution*, as the plaintiffs have attempted to take it. They had a *mere claim*, by force of an *executory contract*—a mere *chose in action*—a mere right to call for the land, if they chose so to do—a *right* they might vindicate or waive, at their option.

Neither our statute, nor any common law principle, warrants such a levy. An equitable interest in a term for years in real estate, cannot be taken. *Metcalf* v. *Scholey*, 2 *New Rep.* 461.

A pledgor's right to redeem cannot be. 1 *Pick.* 389.

Nothing in our decisions warrants it ;—for, in every instance, there was a positive, fixed, equitable estate vested, by force of an executed, uncontested contract—an equitable estate as positive as an equity of redemption.

Such was the case in *Whittlesey* v. *McMahon*, 10 *Conn. R.* 137, in *Botsford* v. *Beers*, 11 *Conn. R.* 370, and in *Davenport* v. *Lacon*, 17 *Conn. R.* 278.

In all these cases, the *contracts were executed*, and estates were *vested*, already, in the debtors. See 2 *Sto. Eq.* § 1040. *c.* 2 *Spence*, 264, 5, 6, and cases there cited.

5. That *H. T. & G.* should have been parties to the suit.

*Dutton*, for the defendants in error, contended, 1. That as the bill avers an agreement between the parties, that the *Pequonnuck Manufacturing Company* and *Diantha Bunnell* should convey the land in *Trumbull* to *Hubbell, Thatcher &*

*Fairfield,*
*June, 1852.*

Bunnell
*v.*
Read.

*Green,* and that, by mistake of the defendants, it was not conveyed, equity will correct such mistake. *DeRiemer* v. *Cantillon,* 4 *Johns. Ch. R.* 85. *Young* v. *Craig,* 2 *Bibb,* 270. *Watson* v. *Wells,* 5 *Conn. R.* 468.

2. That the bill further avers, that in pursuance of this agreement, *Hubbell, Thatcher & Green paid for* those lands. When a man has paid for lands, equity will aid him in obtaining the legal title. *Hopkins* v. *Stump,* 2 *Har. & Johns.* 301.

3. That as the bill avers, that all Mrs. *Bunnell's* interest in the lands, was transferred to *Wm. R. Bunnell,* it was unnecessary to allege notice to him. If he had notice, and paid a valuable consideration, it was a matter within his own knowledge, and he should have pleaded it. If he purchased for a valuable consideration, and without notice, this also must be pleaded. *Coop. Eq. Pl.* 381. 2 *Sw. Dig.* 236.

4. That by the levy of the plaintiffs' execution, all the equitable title of *H. T. & G.* was transfered to the plaintiffs; and such an interest can be taken on execution. *Hopkins* v. *Stump.* ubi sup.

5. That though the bill shows, that the whole *legal* title to the land in *Trumbull,* was part in the *Pequonnuck Manufacturing Co.* and part in Mrs. *Bunnell,* yet the whole *equitable* title was in the *Pequonnuck Manufacturing Co.* By the agreement with *H. T. & G.* the equitable title to the whole was vested in them; and by the levy of the execution, this was transferred to the plaintiffs. There was no necessity, therefore, of specifying how much of the legal title was in each of them respectively.

6. That, in the absence of any plea or proof to the contrary, *Wm. R. Bunnell* merely represents *Diantha Bunnell;* and there is, therefore, no more need of particularity with regard to him than with regard to her. As neither *Diantha,* nor *Wm. R. Bunnell,* had any equitable right, they cannot be injured, by this proceeding.

CHURCH, Ch. J. The superior court has found the averments in this bill to be true. Upon a first reading of it, there seems to be a doubt as to what property the parties to the deed to *Hubbell, Thatcher & Green* intended to include, by the description of the premises contained in it; and

whether they meant to sell and to buy anything not situated in the town of *Bridgeport.* The defendants act upon the assumption, that nothing else was in contemplation, and that no other property was paid for, by *Hubbell & Co.* We think this is a false construction of the language of the bill, and a misapprehension of the object of the purchase.

Although the deed from the *Pequonnuck Manufacturing Company* and *Diantha Bunnell* to *Hubbell, Thatcher & Green,* referred to by the bill, does not, in its terms, describe property located out of *Bridgeport,* yet it is averred, that the proposition of the grantees was, to convey all the interest which the grantees had in all the real estate and privileges used and occupied, by the *Pequonnuck Company,* in working their mills; and it must have been equally the intention of the purchasers to buy them. But a portion of this property was in fact situated in the adjoining town of *Trumbull,* separated from the residue only by an ideal township line, and was originally purchased and used, for the purpose of a reservoir of water for the use of the mills themselves, and necessary for their profitable enjoyment. As we understand this bill, the only difficulty was, that *Hubbell & Co.,* when they purchased, did not know that the town line separated the property they had contracted for, but the grantors did.

Whether the omission in the deed to give a full and accurate description of the property, was the result of fraud or mistake, is not material; in either alternative, a court of equity will interfere to do justice between the parties interested.

The superior court has found, that the intention of all the parties to the conveyance, was, that the property now in dispute should be conveyed to *Hubbell & Co.,* as a part of their purchase, and that the whole was paid for, by them, by the satisfaction of their demand against the *Pequonnuck Company,* and the payment of the claim and mortgage of the said *Diantha Bunnell.*

If then *Hubbell & Co.* actually contracted and paid for the property in question, and either by fraud or mistake, have not received the legal title to it; yet they have a vested equitable interest and title, so that their grantors may be treated as holding the legal title in trust for them. 2 *Sto. Eq.* § 789. 1212. *Champion* v. *Brown,* 6 *Johns. Ch. R.* 398.

But it is objected, that, as *Hubbell, Thatcher & Green* claim nothing, and do not insist either upon fraud or mistake in the conveyance, these plaintiffs, strangers to the purchase, have no right to disturb it.   If this had been merely a contract for a purchase, unexecuted on either side, by payment of the consideration, or possession taken, a mere chose in action, so that no interest, either legal or equitable, in the land itself, had vested, this argument might avail ; but here, as we have said, an interest did vest in *Hubbell & Co.*, so as to create a trust, which was assignable and descendible, and which could be taken on execution.   2 *Sto. Eq.* § 1212. *Whittlesey* v. *McMahon*, 10 *Conn. R.* 138.   *Beers* v. *Botsford*, 11 *Conn. R.* 369.   *Davenport* v. *Lacon*, 17 *Conn. R.* 278.

It must follow, from these premises, that these plaintiffs, creditors of *Hubbell & Co.*, had a right to take their interest, by execution ;—a right which does not depend upon the consent or coöperation of the debtors.   Such equitable interest as *Hubbell & Co.* had in the property situated in the town of *Trumbull*, has been set off to the plaintiffs, their creditors, on execution, and it is the duty of a court of equity to make it available to them, unless some other objections of greater weight exist, that have yet been suggested.

It is however claimed, for *William R. Bunnell*, one of these defendants, that it does not any where appear, that he had notice of the condition of the title, when he received his deed, prior in time to the plaintiffs' lien.   This is true ; but it does not appear, although he received a release or quitclaim deed from *Diantha Bunnell*, that he was therefore a purchaser for valuable consideration, without which, he is not protected by want of notice, if indeed he was without notice.   If he was such a purchaser, the fact was known to himself; and if he would avail himself of this and a want of notice, it was incumbent upon him, in plea or answer, to aver it, and set out the consideration of his purchase.   2 *Sw. Dig.* 236.   *Coop. Eq. Pl.* 281.   *Mitf. Pl.* 277 and notes.

Still another objection is made, which is, that *Hubbell, Thatcher & Green* are not made parties to this proceeding. The bill alleges, that these persons have no remaining inter-

est in the property in dispute, which has all been taken, and set off on the plaintiffs' execution. Why then should they be made parties? If they have in truth yet an outstanding interest, notwithstanding the allegations in the bill to the contrary, and the defendants would avail themselves of it, for any purpose, it should have been by demurrer, for want of parties, or in some other appropriate way. But however this may be, it is quite too late now, to make this objection in this way, as we have often decided. *Lee* v. *The New London Bank*, 11 *Conn. R.* 112.

We are satisfied, that no good objection exists against granting the prayer of this bill; and that the decree of the superior court should be affirmed.

In this opinion the other judges concurred, except WAITE, J., who was disqualified under the late statute.

Judgment affirmed.