HENRY D. WILCOX *vs.* HEMAN S. LUCAS & another.

Hampden. Sept. 29, 1875. — Sept. 26, 1876. AMES, DEVENS & LORD, JJ., absent.

A., the owner of a lot of land, conveyed to B. all the minerals upon a portion of the lot, describing it by metes and bounds, following the course of a vein of iron ore, with the right to enter for the purpose of digging and carrying away the same. Subsequently, A. conveyed by warranty deed to C. all the minerals upon the whole lot, describing it by metes and bounds, with the like right to enter, dig and carry away, excepting and reserving all rights, privileges and easements conveyed to B. by the first deed. In fact, B. and C. bought the property described in the second deed upon joint account, and C. took the deed in trust for himself and B. While the property was so held, B. and C. negotiated a sale of one third thereof to D

and C. executed a deed of warranty to B. and D., purporting to convey to them two undivided third parts of all the rights, privileges and easements described in the second deed, repeating the description of the whole lot by metes and bounds, "meaning hereby to convey to B. one undivided third part of the above described rights, privileges and easements, and one undivided third part to D." The third deed, as between C. and B., was without further consideration, and was intended and understood to execute the trust above mentioned by conveying to B. the legal title to one third of the interests conveyed by the second deed, and to convey for the joint benefit of B. and C. a like third to D. The scrivener who wrote the third deed had the second deed before him, and was directed to make a warranty deed, but was not told either to insert or omit the exception, and he omitted it supposing that its omission was immaterial. At this time, B., C. and the scrivener, under a mistake as to the true interpretation of the deed in the location of the premises, supposed the situation of the iron vein, described in the first deed, to be such that no part of the property conveyed by that deed was included within the description in the second deed. D. at this time knew nothing about the vein of iron ore, or the first deed. After this, C. conveyed his remaining third in the property to B., and D. did the like, and B. became sole owner, subject to a mortgage made by him to D. In an action of tort brought by E., who had become owner of the rights conveyed by the first deed, against B., it was determined that the minerals described in the first deed were upon the land described in the second and third deeds. B. paid the judgment recovered against him in that action, and began an action against C. for breach of the covenants contained in the third deed. On a bill in equity brought by C. against B. and D., to reform the third deed, so that the property and rights described in the first deed might not be included therein, and to restrain B. from prosecuting his action at law against C., *Held*, that the plaintiff was entitled to an injunction against B., restraining him from setting up the third deed or the covenants therein contained, as applicable to the vein of iron ore, so far as regarded the third part thereby conveyed to B.; and also, in order to prevent circuity of action, so far as regarded one half of the third part thereby conveyed for the joint benefit of B. and C. to D., and afterwards conveyed by B. to D.; and also restraining B. from prosecuting his action against C., except so far as might be necessary to ascertain the amount of damages, until B. should have procured D.'s assent to such a reformation of this deed, or to such a release, as would secure C.'s rights.

BILL IN EQUITY by Henry D. Wilcox against Heman S. Lucas and Charles Alden. Hearing upon pleadings and proofs before *Colt*, J., who reported the case for the determination of the full court, in substance as follows:

On January 22, 1864, Erastus Wright, being the owner of a lot of land in Chester, upon which were certain ores, metals and minerals, sold and conveyed to Lucas all the iron ore, metals and minerals in and upon a portion of the lot, (described by metes and bounds, being a strip ten rods wide. following the course of a vein of iron ore,) with the right at all times to enter for the purpose of digging and carrying away the same.

On March 16, 1869, Wright sold and conveyed by warranty deed to Wilcox all the ores, metals and minerals in and upon the whole lot, (describing it by metes and bounds,) with like right to enter, dig and carry away, " excepting and reserving all rights, privileges and easements conveyed " by Wright to Lucas by the first deed.

Wilcox and Lucas bought the property described in the second deed upon joint account, and as equal owners, and the deed was made to Wilcox alone, he holding the property under it as trustee for Lucas and for himself, because for some reason Lucas did not then desire to be publicly known in the transaction.

While the property was so held, Wilcox and Lucas together negotiated a sale of an undivided third part thereof to Alden ; and on April 1, 1869, Wilcox executed a deed of warranty, with the usual covenants, to Lucas and Alden, purporting to convey to them two undivided third parts of all the rights, privileges and easements described in the second deed, (repeating the description of the whole lot by metes and bounds,) " meaning hereby to convey to said Heman S. Lucas one undivided third part of the above described rights, privileges and easements, and one undivided third part to said Charles Alden."

The third deed, as between Wilcox and Lucas, was without further consideration, and was intended and understood to be an execution of the trust above mentioned, by conveying, for the joint benefit of Wilcox and Lucas, to Alden the share which he had bought, and by transferring to Lucas the legal estate in that to which he was equitably entitled. The scrivener who wrote this deed had before him at the time the second deed, or a copy of it ; he was directed to make a warranty deed, but he was not told either to insert or to omit the exception or reservation named in the second deed, and nothing was said to him by either of the parties about it; and he left it out, in making the deed, because of the above direction, and because he supposed that its omission was immaterial. At this time, Wilcox and Lucas and the scrivener, under a mistake as to the true interpretation of the deed in the location of the premises, supposed the situation of the iron vein, described in the first deed, to be such that no part of the property conveyed by that deed was included within the limits of the description of the second deed. There was no

mistake or misunderstanding as to the language used in the third deed, nor any other mistake regarding it, except the mistake as to the situation of the iron vein. Alden was not present when this deed was prepared, and had no reason to expect that it would be made differently from what it was, and knew nothing about the iron vein or the first deed.

On May 2, 1870, Wilcox conveyed his remaining third part of the property to Lucas, and Alden also afterwards conveyed his share to Lucas, so that Lucas became the sole owner of the property, subject however to a mortgage made by him to Alden.

Lucas having begun the business of mining emery upon the land, and opened the mine with the assistance of Wilcox, the Chester Emery Company, which had become the owner of the rights conveyed by the first deed, brought an action of tort in the nature of trespass against Lucas, and recovered judgment for something more than $3000, whereby it was ascertained and determined that the minerals described in the first deed were upon the land described in the second and third deeds. See *Chester Emery Co.* v. *Lucas*, 112 Mass. 424. Lucas paid that judgment, and commenced an action at law against Wilcox for breach of the covenants contained in the third deed.

The present bill prayed that Lucas and Alden might be ordered to correct and reform the third deed, so that the property and rights described in the first deed might not be included therein, and that Lucas might be restrained from prosecuting his action at law against Wilcox, and from selling or conveying the property and rights erroneously included in the third deed, and for further relief. The plaintiff at the argument waived all claim to relief as against Alden.

*G. M. Stearns*, for the plaintiff.

*A. L. Soule*, for the defendants.

GRAY, C. J. By the second deed, executed March 16, 1869, all the ores, metals and minerals upon the whole lot were conveyed by Wright to Wilcox, excepting and reserving the vein of iron ore previously conveyed by the same grantor by the first deed. Although the legal title in all that was conveyed by the second deed thereby vested in Wilcox, the report shows that he in fact bought the property upon joint account for himself and Lucas equally, and that Lucas was equitably entitled to half of it, by way of resulting trust.

By the third deed, dated April 1, 1869, the plaintiff, Wilcox, conveyed to each of the defendants, Lucas and Alden, an undivided third of the premises described in the second deed, without any reservation or exception, and with full covenants of warranty. But the report shows that the plaintiff and Lucas jointly had negotiated the sale of an undivided third part to Alden; that, as between the plaintiff and Lucas, this deed was intended and understood to convey for their joint benefit to Alden the share which he had so bought, and to transfer to Lucas the legal title in that half of the remaining two thirds to which he was already equitably entitled; and that the reservation or exception of the rights in the vein of iron ore, which had been inserted in the deed to Wilcox, was omitted in the deed from him, under a mutual mistake, participated in by Wilcox and Lucas and the scrivener who wrote the deed, that the iron ore was not within the land described therein.

This mistake did not depend upon the legal meaning of the words used, but upon the application of the description in the deed to the land, which involved a mere question of fact. *Chester Emery Co.* v. *Lucas*, 112 Mass. 424. *Hoar* v. *Goulding*, 116 Mass. 132. In such a case, there can be no doubt of the power and the duty of a court of chancery to restrict the operation of the deed to what was actually understood and intended by the parties, either by ordering the deed to be reformed, or by restraining the grantee from availing himself of it beyond the mutual understanding and intention. *Glass* v. *Hulbert*, 102 Mass. 24. *Jones* v. *Clifford*, 3 Ch. D. 779, 792.

The plaintiff is therefore entitled to a decree, in such form as the circumstances of the case may require and admit, to prevent the defendant, Lucas, so far as any interest was directly conveyed to him by this deed, from relying upon the grant or the covenants therein contained, as giving him any right against the plaintiff by reason of the vein of iron ore having been since ascertained to be situated within the land described in this deed.

As to Alden, the case stands differently. He is found by the report to have had no knowledge of the mistake. He therefore acquired an absolute title, legal and equitable, to the third part conveyed to him, according to the unrestricted terms of the deed, with a corresponding right to enforce the covenants of

warranty. This title and right he might convey to Lucas or to any other person. In the absence of any evidence of fraud, or other qualifying circumstances, Lucas must be taken to have acquired, by his subsequent purchase of this third from Alden, all Alden's rights.

But, as the conveyance of this third, which had previously been held by Wilcox in trust for the benefit of himself and Lucas jointly, was made to Alden for the joint benefit of Wilcox and Lucas, both are equally liable in equity on the covenants of warranty in that conveyance, so far as relates to this third ; and, in order to prevent circuity of action, Lucas should be restrained from enforcing those covenants as to one half of this third.

Upon the grounds already stated, the mortgage made by Lucas to Alden constitutes a valid incumbrance in Alden's hands upon whatever share of the estate Lucas had the legal title in at the time of executing the mortgage. But, as between the plaintiff and Lucas, Lucas could not, by any alienation of the estate, in fee or in mortgage, increase the liability of the plaintiff upon the covenants of warranty in the deed of April 1, 1869.

As to the conveyance of May 2, 1870, from the plaintiff to Lucas, of the other third, which had remained the plaintiff's property after his conveyance to Lucas and Alden, no mistake is alleged or proved, and no relief is sought.

The result is that the plaintiff is entitled to an injunction restraining Lucas from setting up the deed of April 1, 1869, or the covenants therein contained, as applicable to the vein of iron ore, so far as regards one undivided half of the premises, consisting of the third part conveyed to Lucas by that deed, and of one half of the third part which was thereby conveyed to Alden and afterwards conveyed by Alden to Lucas ; and also restraining Lucas from prosecuting his action against the plaintiff upon those covenants, except so far as may be necessary to ascertain the amount of the damages, until he shall have procured Alden's assent, either to such reformation of that deed, or to such release, as will secure the plaintiff's rights, and until such reformation shall have been ordered by the court or such release executed by the parties. The terms of the decree must be settled before a single judge.                    *Decree accordingly.*