## HENRY C. BUTLER vs. WALLACE BARNES.

Hartford Dist., Oct. T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

*A* in 1872 agreed by parol to sell and *B* to buy a piece of land, which *A* had marked out by stakes. Both parties understood that the north line was the south line of a lot belonging to *O*, but supposed the stakes were upon that line, and *A*, although he pointed out the stakes as marking the line, had no intention of agreeing to sell anything beyond the true line. A warranty deed was executed by *A* and delivered to and accepted by *B*, bounding the lot on the north by land of *O*, and making no mention of the stakes. *B* in 1873 conveyed the lot, with the same description, to *C*. The stakes were in fact a few inches over the north line of *A's* lot, and upon the lot of *O*, but the error was not discovered

Butler v. Barnes.

until *C* had erected a barn on the lot which stood in part on this strip of land, when in 1886 he was evicted from it by the owner of the *O* lot. *C* then brought a suit against *A* for the reformation of the deed, so as to make it embrace the strip in question, and for damages for the eviction. Before the suit was brought *B* assigned to him all his rights against *A*, growing out of the original transaction. Held—

1. That the pointing out by *A* in the sale to *B* of the stakes as marking the true lines of the lot, was determinative of the actual subject-matter of the sale, and that its effect was not qualified by the fact that *A* intended to sell and *B* to buy only to the boundary line of *A's* ownership.

2. That the mistake of the parties in supposing that the lot described in the deed was identical with the lot as staked out, was such a mistake as entitled the grantee to a reformation of the deed.

3. That the right which *B* would have had to equitable relief passed to *C* as his grantee.

4. That the fact that the deed, if reformed so as to include the strip in question, could not convey a title to the strip, *A* having no title to it, was not a sufficient reason for denying equitable relief.

5. But that the court, without decreeing the reformation of the deed, would render judgment for the damages which would have been recoverable, under the covenants of the deed, if it had been reformed.

6. That *C* was not chargeable with laches in not bringing his suit earlier.

The court below found that *A* did not intend to sell to *B*, nor *B* to *C*, any other land than a piece bounded northerly on the land of *O*, and that all three supposed the land described in the deed of *A* to *B* to be identical with the lot as marked by the stakes, and thence found that the land actually sold and conveyed in both cases was the piece described in the deeds. Held to be a conclusion of law, based upon the idea that the description in the deed must prevail over the boundaries actually pointed out, notwithstanding the mistake of the parties in supposing that they agreed.

Under the practice act (Gen. Statutes, § 877), the plaintiff could in the same action ask for the reformation of the deed and for damages for the breach of the covenants which the deed would contain if reformed.

[Argued October 8th, 1890—decided March 3d, 1891.]

Suit for the reformation of a deed and for damages; brought to the Court of Common Pleas of Hartford County, and heard before *Bennett, J.* The court made the following finding of facts.

On August 15th, 1872, Wallace Barnes, the defendant, sold to Charles H. Riggs a piece of land fronting on North Main street, in Bristol, which he described and bounded in the deed as follows:—" Northerly on land of the heirs of

Mrs. Ann O'Connor, one hundred feet; easterly on high-way called North Main street, thirty-three feet; southerly on grantor, one hundred and sixteen feet and ten inches; westerly on grantor, thirty feet two and a quarter inches;" and conveyed the same by deed containing the usual cove-nants of warranty and seisin.

At the time of the purchase both Barnes and Riggs went upon the land, and Barnes then pointed out four stakes which he had previously placed at the corners, one at each corner, as designating the boundaries of the lot. Both supposed that the lot described in the deed and the lot staked out were identical, and that the lines indicated by the stakes cor-rectly designated the boundaries of the piece of land pur-chased. There were no buildings on the land, and no fence marked any of the boundaries.

This lot was a portion of a tract of land owned by Barnes, and which he had divided into three lots, and had indicated the boundary lines of each lot by a stake driven into the ground at the corner of each lot.

Riggs held the land conveyed to him by Barnes till De-cember 29th, 1873, when he sold it to Henry C. Butler, the plaintiff, and bounded and described the lot as follows:—"Northerly on land of heirs of Mrs. Ann O'Connor, one hundred feet; easterly on highway called North Main street, thirty-three feet; southerly on land of George W. Goodsell, one hundred and sixteen feet and ten inches; westerly on land of Wallace Barnes, thirty feet and two inches;" and conveyed it by deed containing the usual covenants of war-ranty and seisin.

When Riggs sold and conveyed the lot to Butler, the stakes placed at its corners by Barnes were all standing, and both Butler and Riggs supposed the land described in the deed was the lot designated by the stakes.

At about the time of the purchase of the lot, Butler em-ployed a surveyor to locate the boundaries of the described land, who reported that the boundaries were correctly desig-nated by the stakes placed by Barnes.

Barnes, Riggs and Butler all supposed that the lot staked

out correctly designated the land described in the deeds from Barnes to Riggs, and from Riggs to Butler, and that the northerly line of the lot indicated by the stakes correctly marked the boundary line of the land of the heirs of Mrs. Ann O'Connor.

In January, 1874, Butler erected a barn on this lot, about twenty-seven feet wide, and within the boundary line as indicated by the stakes.

In June, 1886, Catharine R. Root, who had become the owner of the land on the north, described as belonging to the heirs of Mrs. Ann O'Connor, brought an action against Butler, returnable to the Court of Common Pleas of Hartford County, claiming that his barn encroached on a portion of her land ; and in this action the court found the barn to be an encroachment, and also established the boundary line between the lands of Mrs. Root and Butler. The boundary line having been established by the court, it is found that the northerly line, as indicated by the stakes placed by Barnes, had included in Butler's lot a triangular piece of land belonging to Mrs. Root, six and one half inches wide at the front on North Main street, and running out to a point at the rear of Butler's lot. By the decision of the court the plaintiff was ejected from this triangular piece.

The title of Butler to the triangular piece, or his right of occupancy of the same, had never been disputed or questioned by any one till about the time of the commencement of the action of *Root* v. *Butler*, and the plaintiff did not learn until the rendering of final judgment in that action that the line of the land of the heirs of Mrs. O'Connor, and the northerly line of the lot staked out by Barnes, were not identical.

Riggs on the 6th day of March, 1888, and before the present suit was brought, executed and delivered to the plaintiff the following assignment, which is set forth in the complaint :—

"BRISTOL, CONN., March 6, 1888.

" In consideration of the receipt of one dollar, which is hereby acknowledged, I hereby sell, assign and transfer to

Henry C. Butler all claim, right, and cause of action, which I may have against Wallace Barnes, arising from the conveyance by said Barnes to me of a certain piece of land, by deed dated August 15th, 1872, or from the covenants in said deed contained, or from the parol contract made by said Barnes with me for the sale of a lot of land, to complete which said deed was made; and I hereby authorize said Butler in my name or in his own, but for his own benefit, to prosecute his suit against said Barnes for the recovery of judgment upon said covenants, or for a reformation of said deed, or for other legal or equitable relief arising out of such contract, deed or covenants, as he may deem fit.

C. H. RIGGS.   [L. S.]"

Before the commencement of this action the plaintiff demanded of Barnes a reformation of his deed, and also demanded payment of damages.

The court finds that the land actually sold and conveyed by Barnes to Riggs, and by Riggs sold and conveyed to the plaintiff, was the piece described in their deeds; and that all three supposed the land described in the deeds was identical with the lot staked out by Barnes. But Barnes did not intend to sell and convey to Riggs any other land than a piece bounded northerly on the land of the heirs of Mrs. Ann O'Connor, and extending southerly on North Main street from the line of said land of Mrs. O'Connor thirty-three feet; and Riggs sold to the plaintiff the same land, having the same northerly line and the same frontage on North Main street. Barnes had attempted to locate such a piece by placing stakes at its corners, but he had mistaken the correct northerly line.

Butler had occupied the lot staked out, supposing it to be the land described in his deed. The decision of the court had ejected him from a portion of the land he was occupying, but not from any part of the land described in his deed. He has lost no land which he actually bought of Riggs. The substance of the whole matter is that Barnes, Riggs and Butler were all mistaken as to the correct location of the northerly line of the piece of land bought and sold by them.

Upon the foregoing facts on the trial the plaintiff claimed as matter of law that the pointing out by Barnes to his grantee, while the negotiations were in progress, of a lot exactly located and staked, which lot all the parties supposed to be the lot which was to be sold and conveyed, and the mutual mistake between them by which they gave and received the deeds as correctly describing the staked lot, entitled the plaintiff to a reformation of the deed, to make it so describe the staked lot, and to damages upon the covenants as reformed. But the court overruled these claims, and held that the plaintiff was not entitled to the reformation of his deed as asked for, nor entitled to recover damages from the defendant.

Upon these facts the court rendered judgment for the defendant, and the plaintiff appealed to this court.

*N. A. Pierce* and *E. Peck*, for the appellant.

1. This action was instituted in accordance with the ruling of this court in *Broadway* v. *Buxton*, 43 Conn., 282. The facts offered to be proved by the plaintiff in that case were identical with those at bar. The grantee had brought an action of covenant at law, and the court said :—" An action on the covenants can afford no remedy; resort must be had to a court of equity to correct the deed, and make it conform to the intent and agreement of the parties." This ruling was in accordance with the entire current of modern equity decisions. The power and duty of equity to grant reformation of deeds and other writings upon parol evidence of the real intention of the parties, and of the mutual mistake by which they have failed to carry out that intention, is constantly stated in more and more unqualified language. 2 Pomeroy's Equity, § 866 ; Story's Eq. Jur., § 152 ; *Johnson* v. *Taber*, 10 N. York, 319 ; *Bush* v. *Hicks*, 60 id., 298 ; *Tabor* v. *Cilley*, 53 Verm., 487 ; *May* v. *Adams*, 58 id., 74. No Connecticut case except that of *Broadway* v. *Buxton* involved exactly the same facts as the case at bar, but the general doctrine of the reformation of deeds in case of mutual mistake has been applied many times, and with no

intimation that the rule was narrower here than in other jurisdictions. *Chamberlain* v. *Thompson*, 10 Conn., 243; *Stedwell* v. *Anderson*, 21 id., 139; *Bunnell* v. *Read*, id., 586; *Knapp* v. *White*, 23 id., 543; *Blakeman* v. *Blakeman*, 39 id., 320; *Cake* v. *Peet*, 49 id., 501; *Palmer* v. *Hartford Fire Ins. Co.*, 54 id., 488. It is true that this court, by a majority of the judges, in *Osborn* v. *Phelps*, 19 Conn., 63, held that a deed cannot be reformed and enforced in the same action. This doctrine was based upon the statute of frauds, and the court rely upon the fact that no part of the purchase money had been paid by the plaintiff, no possession taken, and no act done by him in reliance upon the parol contract. In the case at bar the payment of the purchase price, the sixteen years' occupancy of the land, the erection of a barn partly upon the strip of land in dispute, effectually dispose of any argument under the statute of frauds. But *Osborn* v. *Phelps* was questioned and virtually overruled in *Thompsonville Scale Mfg. Co.* v. *Osgood*, 26 Conn., 16. It is contrary to the whole current of modern American decisions, and certainly is obsolete under our present practice, in which equity and law are joined, and in which complete and final justice, equitable or legal, or both, is commonly to be obtained in a single action. Story's Eq. Jur., § 161; Pomeroy's Eq., §§ 861, 862, 866.

2. There can be no question as to the right of the plaintiff (grantee of the original grantee) to bring this action. Even if the action were purely a legal one on the covenant, the right of action against the remote warrantor is unquestioned. But the plaintiff here was not only in privity of title with the original parties, but was a party to the mistake, and fully within the equities which existed between them. An action for the reformation of a deed may be brought not only by the original parties, but by their privies in title. 1 Story's Eq. Jur., § 165. *Bunnell* v. *Reed*, 21 Conn., 586, was an action for the reformation of a deed brought by an execution creditor of the original grantee. But all question as to the right of the plaintiff to bring this action is removed by the assignment from Riggs. The validity of this assignment is

fully established by *Dickinson* v. *Burrell*, L. R., 1 Eq., 337, and *Traer* v. *Clews*, 115 U. S. R., 528. See also 2 Story Eq. Jur., § 1040 ; *Elting* v. *Clinton Mills Co.*, 36 Conn., 296. But the whole question as to the right of the assignee to sue upon " any chose in action " is put at rest by our statute, § 981. See *Hoyt* v. *Ketcham*, 54 Conn., 60.

3. But it may be claimed that the finding " that the land actually sold and conveyed by Barnes to Riggs, and by Riggs * * * to the plaintiff, was the piece described in their deeds ; that Barnes did not undertake to sell any other land than a piece bounded northerly on the land of the heirs of Ann O'Connor ; and that he (Butler) has lost no land which he actually bought of Riggs,"—is fatal to the plaintiff's right of action. But we believe that it will appear clearly, upon careful examination, that these findings are really the legal conclusions of the court below. The court goes over in detail all the facts alleged in the complaint, and denied in the answer, and substantially finds them all. It then draws its conclusions as to what is to be deemed the sale and undertaking arising from those facts, leading up to the judgment for the defendant. This court has recently said of a similar finding :—" It was not therefore intended as a finding of a fact based on independent evidence, but only as an application of the special facts previously stated to the determination of the legal issue. The question is therefore controlled by the special facts referred to and the legal conclusions to be drawn therefrom." *Tyler* v. *Waddingham*, 58 Conn., 386. These conclusions of the court are erroneous. Can it be that one who has staked out a certain lot, takes a prospective purchaser to see it, points out the stakes " as designating the boundaries of the lot," leads him to suppose that the lines indicated thereby correctly designate the boundaries, and thereupon makes a sale, does not " undertake " to sell that precise lot. Can it be that the purchaser, going into possession, occupying sixteen years, maintaining the staked line, and then ejected from it, " has lost no land which he actually bought ? " The making, delivery and acceptance of every deed are necessa-

rily the carrying out of some prior parol contract of sale. The deed cannot be drawn, nor the money paid, unless the minds of the parties as to the lot to be bought, and the money to be paid, have already met. The negotiations out of which the contract arose were carried on upon the visibly staked-out lot, which stakes the vendor pointed out " as designating the boundaries," "which lot all the parties supposed to be the lot which was to be sold and conveyed." In view of those stakes, and in that supposition, the vendee agreed to pay whatever price was paid. Can it be true that the resulting contract concerned, not that visible lot, but an unknown, indefinite lot, bounded by a legal line first established by a judgment many years after? This court has, in recent cases, fully established the doctrine that a so-called finding, which really involves legal conclusions from other facts specially found, may be reviewed here. *Mead* v. *Noyes*, 44 Conn., 487 ; *Hayden* v. *Allyn*, 55 id., 280 ; *Tyler* v. *Waddingham*, 58 id., 375.

*J. J. Jennings*, for the appellee.

1. The action was brought too late. Barnes's deed was dated August 15th, 1872, and the service of the complaint was made August 16th, 1889. We claim that the case is within the statute of limitations. Wood on Limitation of Actions, 116 ; *Oakes* v. *Howell*, 27 How. Pr., 145. If a statute of limitations ought ever to be taken advantage of, this would seem a proper case. A man makes a deed ; that deed is accepted. Seventeen years after it is sought to cause an entirely different contract to be substituted for the one expressed in writing at the time, by means of oral testimony. Such an attempt ought to be met by a refusal.

2. The plaintiff has no standing in this court against the defendant. When the plaintiff vouched in the defendant in the case of *Root* v. *Butler*, the latter could see that his deed was correct, and it appears clearly from the complaint that the plaintiff can have no action at law against the defendant on any covenant of warranty in the deed. The defendant is therefore in no wise affected by the judgment in *Root* v. *But-*

*ler.* No contract relation exists between the plaintiff and defendant. Barnes has given Butler no deed, has entered into no contract with him. Barnes is privy to no contract with Butler. Butler is a naked assignee of Riggs, and Riggs had nothing to assign. The assignment is void, or at least an assignee thereunder gains no right to bring or maintain a suit. The leading case is *Prosser* v. *Edmonds*, 1 Younge & Coll., 481. But the whole question is gone into at length in 2 Story's Eq. Jur., § 1040 *h*, and note, and there are quotations there from the cases, especially the English cases. See also *Hill* v. *Boyle*, L. R., 4 Eq., 260. An action for the reformation of a deed is not sustainable by one who does not as a matter of fact connect himself with the arrangement, bargain or contract under which the deed was made; and the mere fact that one is a grantee of the party to whom the deed was made, does not so connect him. *Willis* v. *Sanders*, 51 N. York Super. Ct., 384. The assignment of a mere right of action to procure a transaction to be set aside on the ground of fraud is not permitted. 3 Pomeroy Eq., § 1276; *Milwaukee & Minn. R. R. Co.* v. *Milwaukee & Western R. R. Co.*, 20 Wis., 195. The claim here is, I suppose, mistake. But the principle is the same whether fraud or mistake. A right to prosecute a suit in equity to set aside a deed on the ground of fraud is not assignable. *Jones* v. *Babcock*, 15 Mo. App., 149; *Brush* v. *Sweet*, 38 Mich., 574; 2 Spence's Eq., 363, 369, 372. A mere right to file a bill in equity is not assignable. *Marshall* v. *Means*, 12 Geo., 61; *Norton* v. *Tuttle*, 60 Ill., 130; *Mitchell* v. *Winslow*, 2 Story, 630; *Kendall* v. *U. States*, 7 Wall., 113.

3. But waiving all question as to the plaintiff's right to sue, he fails to bring himself within the plain and well established rules governing cases concerning the reformation of written instruments. (1.) The statute of frauds. Contracts concerning the sale of lands must be in writing. There is no written contract, no pretense that there is or ever was one between Butler and Barnes, nor between Riggs and Barnes, about the purchase of land bounded on the north by a line drawn between two stakes. If parties to a written

contract can come into court and have an oral contract sub-
stituted for a written contract, the statute of frauds may as
well be repealed. (2.) Where the language of a convey-
ance is unambiguous, no parol evidence to vary or control
its import is admissible. *Stone* v. *Clark*, 1 Met., 378 ; *Os-
born* v. *Phelps*, 19 Conn., 63. (3.) The only resource left
to the plaintiff is the principle that a court of equity will
reform contracts where, through fraud, accident or mistake,
the written agreement does not express the intent of the
parties. There is no claim of fraud or accident. The
plaintiff says there was a mutual mistake. But was
this mistake, if there was one, one that affects this deed?
Will even the plaintiff claim that Barnes would have writ-
ten the description of the north boundary differently under
any circumstances? The plaintiff must prove this in order
to make out his case. The fact that he got the foundations
of his barn six inches too far north through a mistake made
in locating the boundary, cannot affect this case. The court
finds that there was no mistake as to the contract itself; that
the plaintiff did not rely upon any representation of Barnes
or Riggs as to where the boundary was because he employed
a surveyor to locate his north boundary according to the deed.
PARDEE, J., in *Palmer* v. *Hartford Fire Ins. Co.*, 54 Conn.,
501, says :—" Of course the presumption in favor of the
written over the spoken agreement is almost resistless ; and
the court has wearied itself in declaring that such prayers
must be supported by overwhelming evidence or be denied."
" A written instrument will not be reformed by a court of
equity until a mistake is made to appear beyond reason-
able controversy." *Hinton* v. *Citizen's Mut. Ins. Co.*, 63 Ala.,
488. See also *Remillard* v. *Prescott*, 8 Or., 37 ; *McCoy* v.
*Bayley*, id., 196 ; *Rowley* v. *Flannelly*, 30 N. Jer. Eq., 612 ;
*McDonnell* v. *Milholland*, 48 Md., 540 ; *Yocum* v. *Foreman*,
14 Bush, 494 ; *Hamlon* v. *Sullivant*, 11 Ill. App., 423 ; *Gris-
wold* v. *Hazard*, 26 Fed. Rep., 135 ; *Brohammer* v. *Hoss*, 17
Mo. App., 1 ; *Cox* v. *Woods*, 67 Cal., 317 ; *Stiles* v. *Willis*,
66 Md., 552 ; *Paulison* v. *Iderstine*, 28 N. Jer. Eq., 306 ;
*Ramsey* v. *Smith*, 32 id., 28 ; Stark. Ev., 676. Equity will

not relieve against mistakes due to the plaintiff's want of reasonable care and diligence, in the absence of fraud. *Pearce* v. *Suggs*, 85 Tenn., 724 ; *Lewis* v. *Lewis*, 5 Or., 169 ; *Brown* v. *Fagan*, 71 Mo., 563 ; *Iverson* v. *Wilburn*, 65 Geo., 103. A mistake to be the ground of reformation of a written agreement should be proved as much to the satisfaction of the court as if admitted. *Ford* v. *Joyce*, 78 N. York, 618 ; *Turner* v. *Shaw*, 96 Mo., 22. The mistake must appear beyond a reasonable doubt. *Jarrell* v. *Jarrell*, 27 W. Va., 743. Equity will not reform a deed where the parties did not mistake its contents but only its effect ; also where the misdescription of the land conveyed is the result of carelessness in procuring a correct description. *Toops* v. *Snyder*, 70 Ind., 554. A written instrument will be reformed for fraud or mistake only so as to give effect to a previous binding contract of the parties. *Petesch* v. *Hambach*, 48 Wis., 443. The mere fact that had the parties been differently informed they would not have made the deed as they did, affords no ground for reformation. *St. Anthony Water Power Co.* v. *Merriman*, 35 Minn., 42. Words inserted intentionally cannot be changed on the ground that one party misunderstood their meaning or effect, or that they conflict with a contemporaneous parol agreement. *Barnes* v. *Bartlett*, 47 Ind., 98. Equity will correct errors, but of course cannot make new contracts. *Casady* v. *Woodbury County*, 13 Iowa, 113. A contract must have been made and by a mutual mistake of the parties incorrectly reduced to writing. *Lanier* v. *Wyman*, 5 Rob., (N. Y.) 147 ; *Sutherland* v. *Sutherland*, 69 Ill., 481 ; *Evarts* v. *Steger*, 5 Or., 147. The courts in this jurisdiction have usually confined themselves to correction of mere formal mistakes or omissions in written instruments. The principle which guides this court was well stated by Judge PARDEE, in the case cited above. Special attention is also called to *Thompsonville Scale Mfg. Co.* v. *Osgood*, 26 Conn., 16 ; *Osborn* v. *Phelps*, 19 id., 63. If the plaintiff wanted the northern boundary to be a line between two stakes, why did he not have that description and a covenant to that effect inserted in the deed ? The description by boundaries is

conclusive. It was the duty of the plaintiff to measure his land and ascertain the facts according to the boundaries. If he desired to limit the defendant, he should have asked to have express covenants inserted. "It is not competent to control the boundaries given in a deed by parol evidence that the parties supposed other land, in addition to what is embraced within such bounds, was included in the grant, or that the monument expressly described is different from the one intended." *Powell* v. *Clark*, 5 Mass., 355. See also 3 Washb. Real Prop., 364; *Frost* v. *Spaulding*, 19 Pick., 445; *Child* v. *Wells*, 13 id., 121; *Pride* v. *Lunt*, 19 Maine, 115; *McCoy* v. *Galloway*, 3 Ohio, 282; *Emerick* v. *Kohler*, 29 Barb., 169; *Parker* v. *Kane*, 22 How., 1; *Clark* v. *Baird*, 5 Seld., 183; *Dodge* v. *Nichols*, 5 Allen, 548; *Spiller* v. *Scribner*, 36 Verm., 245; *Gilman* v. *Smith*, 12 id., 150; *Peasles* v. *Gee*, 19 N. Hamp., 273; *Terry* v. *Chandler*, 16 N. York, 354; *Dean* v. *Erskine*, 18 N. Hamp., 83; *Roberti* v. *Atwater*, 42 Conn., 266; *Snow* v. *Chapman*, 1 Root, 528; Rawle's Covenants for Titles, 523.

SEYMOUR, J. In this case the appellee claims at the outset, and as conclusive of the question before us, that the court below has decided, as a question of fact, that no mistake occurred between the parties to the original deed which the plaintiff seeks to have reformed, but that it accurately expresses the contract which was made and correctly describes the land which was sold.

Is this claim well founded? The finding states that in 1872 the defendant sold to one Riggs a piece of land which he described and bounded in the deed as follows:—"Northerly on land of the heirs of Mrs. Ann O'Connor, one hundred feet; easterly on highway called North Main street, thirty-three feet; southerly on grantor, one hundred and sixteen feet and ten inches; westerly on grantor, thirty feet two and a quarter inches;" and the deed contained the usual covenants of warranty and seisin.

At the time of the purchase both Barnes and Riggs went upon the land, and Barnes then pointed out four stakes

which he had previously placed at the corners, one at each corner, as designating the boundaries of the lot. Both supposed that the lot described in the deed and the lot staked out were identical, and that the lines indicated by the stakes correctly designated the boundaries of the piece of land purchased. There were no buildings on the land, and no fence marked any of the boundaries.

Barnes and Riggs, and Butler, the plaintiff, who afterwards purchased the land of Riggs, all supposed that the lot staked out correctly designated the land described in the deeds from Barnes to Riggs and from Riggs to Butler, and that the northerly line of the lot indicated by the stakes correctly marked the boundary line on the land of the heirs of Mrs. Ann O'Connor.

The court finds that " the land actually sold and conveyed by Barnes to Riggs, and by Riggs sold and conveyed to the plaintiff, was the piece as described in their deeds ; and that all three supposed the land described in the deeds was identical with the lot staked out by Barnes. But Barnes did not undertake to sell and convey to Riggs any other land than a piece bounded northerly on the land of the heirs of Mrs. Ann O'Connor, and extending southerly on North Main street from the line of the land of Mrs. O'Connor thirty-three feet ; and Riggs sold to the plaintiff the same land, having the same northerly line and the same frontage on North Main street. Barnes had attempted to locate such a piece by placing stakes at its corners, but he had mistaken the correct northerly line. Butler had occupied the lot staked out, supposing it to be the land described in his deed. The decision of the court had ejected him from a portion of the land he was occupying, but not from any part of the land described in his deed. He has lost no land which he actually bought of Riggs. The substance of the whole matter is that Barnes, Riggs, and Butler, all were mistaken as to the correct location of the northerly line of the piece of land bought and sold by them."

From this finding it is evident that the court did not decide, as matter either of law or of fact, that *no* mistake oc-

curred between the parties to the original deed.  A mistake is clearly stated, namely, " that both parties supposed that the lot described in the deed and the lot staked out were identical, and that the lines indicated by the stakes correctly designated the boundaries of the piece of land purchased." That is to say, both parties supposed that the deed accurately described the lot which was staked out and which the defendant pointed out as the subject of the sale.  This supposition was incorrect.  The deed did not accurately describe the northern boundary of the lot so designated and pointed out by the grantor.

Here the mistake arose.  This was the mistake.  The reasoning of the court in coming to its conclusion seems to have been substantially this :—The line pointed out as the correct line for the northern boundary, when the sale was made, was indicated by two stakes; the parties supposed that the line so indicated was identical with the O'Connor line and would be correctly described by bounding the lot sold northerly on land of the heirs of Mrs. O'Connor.  The deed did bound the lot northerly on the land of said heirs ; therefore I find that the lot actually sold was the piece described in the deed and not the piece pointed out and contained within the four stakes, and that the defendant did not undertake to sell and convey to Riggs any other land than a piece bounded northerly on the land of the heirs of Mrs. O'Connor.

The conclusion is manifestly a conclusion of law based upon the idea that the description of the boundaries in the deed must prevail over the boundaries actually pointed out upon the premises, and that the parties must be taken to have intended to contract according to the boundaries named in the deed, although they were mutually mistaken in supposing these were identical with the boundaries pointed out as above stated.

The claim which the court overruled, as stated in the finding, was the claim of the plaintiff " that, as matter of law, the pointing out by the defendant to his grantee, while the negotiations were in progress, of a lot exactly located and

staked, which lot all the parties supposed to be the lot which was to be sold and conveyed, and the mutual mistake between them by which they gave and received the deeds as correctly describing the staked lot, entitled the plaintiff to a reformation of the deed so as to make it describe the staked lot, and to damages upon the covenants as reformed." In overruling this claim the court manifestly decided that, upon the facts stated, the law was so that the plaintiff was not entitled to the relief sought. Was this decision correct? That is the question now presented. As between the original parties would the grantor have been entitled to a reformation of his deed?

The mistake which the parties made was, as we have seen, that both supposed that the lot described in the deed and the lot staked out were identical. Both supposed that the description in the deed covered the land which was staked off and had been pointed out by the defendant as the lot sold. Notwithstanding this the court held that the land actually sold and conveyed was the piece described in the deed. That it was the piece *conveyed* by the terms of the deed is self-evident. That it was the piece *sold* is the conclusion upon which the court bases its refusal to reform the deed so as to embrace the lot contained between the lines of the stakes.

Notwithstanding, also, the mistake set forth, the court further finds that the defendant " did not undertake to sell and convey to Riggs any other land than a piece bounded northerly on the land of the heirs of Mrs. O'Connor." If by the word " undertake " the court means that, taking all the facts together, it must be held that the defendant only agreed to sell what the deed specifies, which is the natural meaning of the word as here used, then the issue is plainly before us.

It is clear that, while on the premises, the defendant undertook, both in the sense of offered and of agreed, to sell the lot he pointed out. The deed through the mistake of the parties did not express that undertaking. What would have prevented the grantee from having it so corrected that it should express the undertaking?

It may be suggested that it is evident, that the defendant did not intend to sell any land which he did not own and therefore it was no mistake on his part to bound the land in the deed as he did. But the suggestion is specious. It has reference to the general intent which every honest man has within himself not to sell what is not his own. And yet he may fully intend, as between himself and another, to sell what he mistakenly supposes to be his own. It may, no doubt, be truly said, in one sense, that the grantor in this case did not intend to sell nor the grantee to buy, land belonging to the O'Connor heirs. At the same time it is true that the grantor intended to sell, and the grantee to buy, exactly the lot which was pointed out as for sale between the lines indicated by the stakes. The mistake was in supposing that the line between the north stakes was identical with the O'Connor line. If the grantor had known where that line was he would have made his stakes conform to it.

The bargain was made before the deed was executed. There was no misunderstanding as to the shape or dimensions of the land which was the actual subject of the sale. If the parties had united in fencing it after the execution and delivery of the deed, they would have built the fence from stake to stake.

The true statement of the case would be that the defendant had no intention of encroaching on the O'Connor land when he marked out for sale, and sold, a lot which, in fact, so encroached, though described in the deed, in accordance with the parties' belief, as bounded north on the O'Connor's heirs' land. If the court had found that, though the lot was pointed out, yet the parties intended to bound it north on the O'Connor land, whether the stakes correctly indicated that line or not, such finding would present a very different case and would have been conclusive. If, also, the question had arisen in a court of law as to what land the defendant had sold, then the deed, upon well known principles, would have been held to express the contract and to exclude parol testimony to vary or contradict its terms. The very reason for coming into a court of chancery is to avoid the applica-

tion of those principles, and, in a proceeding brought for that purpose, to make the deed conform to the contract of which it purports to be the evidence. It seems to a majority of us that here was a mistake of such a nature as would have entitled the original grantee to have the deed reformed. *Broadway* v. *Buxton*, 43 Conn., 282, was an action upon the covenants of warranty and seisin. Buxton gave a deed of certain land to Broadway which bounded it " west by land of Calvin Hoyt, John L. C. Hoyt, Alva June and land of Ira Scofield." It appeared therefore from the deed that the lands of the four proprietors named extended along the entire length of the western boundary. Such however was not the case. One G. W. Young also owned land abutting for several rods on the west. After the execution of the deed the true divisional line between said Young's land and the land conveyed to Broadway was judicially ascertained and determined. Broadway claimed that by such line he was dispossessed and evicted of a strip of land which was covered by the deed of Buxton to him, and that therefore Buxton was liable on the covenants in his deed. To support this claim he offered parol evidence that prior to completing the contract for purchasing the land, and prior to the giving of the deed, the parties went upon the premises, and Buxton pointed out a line of fence constructed partly of stone and partly of brush, running generally in a northerly and southerly direction, as being in the western boundary line of the land proposed to be conveyed. This line was in fact one or two rods westerly of the line established as the true divisional line between Young's land and the plaintiff's land. It was for the loss of that strip of land, consequent upon establishing the boundary line farther east than Broadway anticipated, that the action was brought. This court said :—" As this is an action at law on a sealed instrument, the intent of the parties must be gathered from the instrument itself, not from any parol evidence. * * * The western boundary of the land conveyed is the eastern line of the adjacent proprietors ; those lands, by the express terms of the deed, being made the plaintiff's western boundary.

No line of fence, no visible monuments, are referred to as boundaries, and to interpolate them as such, by parol, would clearly affect and vary the meaning of that instrument. Such a course is clearly inadmissible. If the plaintiff has been led into error, if he has been deceived or imposed upon by the representations of the defendant as to the western boundary of the land contracted for, and that it extended to a line of fence, pointed out, which would give him more land than his deed covers, an action on the covenants can afford no remedy; resort must be had to a court of equity to correct the deed and make it conform to the intent and agreement of the parties."

In *May* v. *Adams*, 58 Verm., 74, two tenants in common divided their land by deed of partition. There was a mutual mistake in the deed in that the words and figures " north 45 degrees 30 minutes west" did not correctly describe the line agreed on. The agreed line was recognized and understood by them to be the one described in the deed so long as they were the owners; and the parties to the suit purchased with a like understanding and also recognized it for several years. When the mistake was discovered a bill in chancery was brought by May for the reformation of the deeds so as to make them describe accurately the line originally agreed on. It was held that the mistake was remediable in equity, both as between the original owners and their grantees. The court says :—" With the deeds reformed, making the division line to follow the old fence, the defendant is secured in his title to all the land that he understood his deed included at the time of his purchase, and the orator is entitled to have the deeds of partition reformed as against the defendant so as to conform to the practical location of the division line as made by the Doanes (the original owners) and understood by the orator and defendant at the times of their respective purchases."

See also *Bush* v. *Hicks*, 60 N. York, 298; *Beardsley* v. *Knight*, 10 Verm., 185 ; *Tabor* v. *Cilley*, 53 id., 487 ; *Wilcox* v. *Lucas*, 121 Mass., 25 ; *Allen* v. *McGaughey*, 31 Ark., 252 ; *Calverley* v. *Williams*, 1 Vesey Jr., 210 ; Frye on Specific

Performance, § 501; 2 Pomeroy's Equity Jurisprudence, § 866.

For the purpose, then, of putting the original grantee, Riggs, in a position to recover for a breach of the covenants in the defendant's deed, it is clear, both upon principle and authority, that his deed might have been reformed and made, in terms and description, to cover the land pointed out and lying within the lines which connected the corner stakes. Making the deed describe the line pointed out as the boundary, could only result in exact justice between the parties to it.

In *Johnson* v. *Taber*, 10 N. York, 319, it was held that where the boundaries of lands are pointed out by the vendor to the purchaser, but, in the written contract of sale and in the deed executed in pursuance of it, the description is made, by mistake, to include lands not within such boundaries, the deed will be corrected, on the application of the vendor, so as to correspond with the boundaries thus pointed out; and that it is no answer to such application that the description in the contract and deed was made in accordance with the instructions of the vendor, where it appears that both he and the vendee believed the description to correspond with the boundaries.

There being, then, a mutual mistake in the deed, which would have entitled the original grantee to have it reformed, the purchaser from him brings this complaint. Is he entitled to the relief which he demands?

And first, irrespective of the facts in this case, can the claims therein made be properly joined in a single complaint? The plaintiff asks for the reformation of the deed, to make it state the true contract between the parties, and then, not a specific performance of the contract thus truly stated, but damages for the breach of covenants which the contract as amended will show that he is entitled to upon the facts of the case. Under the practice act, (Gen. Statutes, sec. 877,) all courts which are vested with jurisdiction both at law and in equity, may hereafter, to the full extent of their respective jurisdictions, administer legal and equita-

ble remedies, in favor of either party, in one and the same suit, so that legal and equitable rights of the parties may be enforced and protected in one action.

The rules under said act, chapter two, section two, refer to " a complaint demanding specific equitable relief and also damages, as equitable relief, incident thereto; (as for the reformation of a policy of insurance and the payment of a loss under the same as reformed.) " Pomeroy, in his book on Remedies and Remedial Actions, sec. 78, treats of the provisions, in the several codes and practice acts, combining legal and equitable actions and defenses in the same suit. He says:—" Where a plaintiff is clothed with primary rights, both legal and equitable, growing out of the same cause of action or the same transaction, and is entitled to an equitable remedy and also to a further legal remedy based upon the supposition that the equitable relief is granted, and he sets forth in his complaint the facts which support each class of rights and which show that he is entitled to each kind of remedy, and demands a judgment awarding both species of relief, the action will be sustained to its full extent in the form adopted." This rule, he says, has been firmly established by the court of last resort in New York and is adopted in all the states with one or two exceptions.

He states several cases where it has been applied; among them, an action by the holder of the legal title to correct his title deed, to recover possession of the land according to the correction thus made, and to recover damages for withholding such possession; and an action by the grantor of land to correct his deed by the insertion of the exception of the growing timber, and to recover damages for trees, embraced in the exception, wrongfully cut by the grantee. The author further says:—" The court, instead of formally conferring the special equitable remedy and then proceeding to grant the ultimate legal remedy, may treat the former as though accomplished, and render a simple common law judgment embracing the final legal relief which was the real object of the action." See sec. 80.

It was a maxim of equity jurisprudence, before the statu-

tory joinder of legal and equitable actions, that when the chancellor had once obtained jurisdiction he would do complete justice. But the limit of his power in that direction was not well defined. Certainly the spirit of our practice act, and of acts of a similar character, would enlarge such jurisdiction rather than restrict it. The application now is to a single court having both legal and equitable jurisdiction, and the intention of the law is to give the suitor full and complete relief, within certain well defined rules as to joinder of actions and parties, in a single action.

If it be suggested that, inasmuch as the defendant does not own the strip of land in question, a complaint for the reformation of the deed and a specific performance of the reformed contract would not lie, and therefore the court will refuse to reform the deed, we reply, that for that very reason—because he cannot obtain a specific performance—the plaintiff is entitled to the relief he is seeking. There is no other way to compel the defendant to pay for what, not owning, he sold. An action of covenant broken will not lie because, unreformed, the deed does not cover the land. If it cannot be corrected so as to make it include the land sold, then the grantee is remediless, and the protection expected from the covenant of warranty breaks down just when it is needed. As to the facts on this point, the finding shows that in 1873 Riggs, the original grantee, sold the land in question to the plaintiff and conveyed it by a deed, containing the usual covenants of warranty and seisin, in which it was bounded and described to all intents and purposes precisely as in the original deed. The stakes placed at the corners by the defendant were still standing, and both Riggs and the plaintiff supposed the land described in the deed was the lot designated by the stakes.

About the time of the purchase the plaintiff employed a surveyor to locate the boundaries of the described land, who reported that they were correctly designated by the stakes. In 1874 Butler erected a barn on the lot within the boundary line as indicated by the stakes. In 1886 Catharine R. Root, who had become the owner of the land described in the deeds

as belonging to the heirs of Mrs. Ann O'Connor, brought an action against the plaintiff, claiming that his barn encroached upon her land. The court found upon the trial of the action the barn to be an encroachment, and also established the boundary line between the lands of said Root and the plaintiff, and it is found by the court below, in accordance with that decision, that the northerly line, as indicated by the stakes, had included in the plaintiff's lot a triangular piece of land belonging to said Root, six and one half inches wide at the front and running out to a point at the rear of the lot. By this decision the plaintiff was ejected from such triangular piece. The title of the plaintiff to the triangular piece and his right of occupancy had never been disputed until about the time the action of Root against Butler was commenced, and the plaintiff did not learn, until final judgment was rendered in that action, that the line of the land of Mrs. O'Connor's heirs and the northerly line of the lot staked out by the defendant were not identical. Riggs executed and delivered to the plaintiff an assignment of all his claim, right and cause of action against the defendant arising out of said sale and conveyance, and authorized him to bring suit in his own name.

These facts present the case of a grantee, in a deed containing the usual covenants of warranty and seisin, who has been evicted from a portion of the granted premises, seeking, first, to reform the deed, and second, to recover damages, not against his immediate grantor, but against a remote grantor who conveyed the premises to his grantor with the same covenants. It is familiar law that the covenants of seisin, and of a right to convey, and against encumbrances, are personal covenants, not running with the land or passing to the assignee; for, if false, there is a breach of them as soon as the deed is executed and they become *choses in action*, which are not assignable at common law. But the covenant of warranty and the covenant for quiet enjoyment are prospective, and an eviction is necessary to constitute a breach of them. They are therefore in their nature real covenants. They run with the land conveyed, and descend to heirs, and

vest in assignees. So long as the grantor has not a good title there is a continuing breach. In respect of them this court held, in *Booth* v. *Starr*, 1 Conn., 246, that " every assignee may maintain an action against all or any of the prior warrantors till he has obtained satisfaction. This results from the nature of the covenant, for each covenantor covenants with the covenantee and his assigns, and as the lands are transferable it is reasonable that covenants annexed to them should be transferred." And (p. 249) . " that the nature of the engagement of the first covenantor is to indemnify all the subsequent covenantees from all damage arising from a breach of the covenant."

The plaintiff, as assignee of the real covenants of the deed, has also a right of action against the defendant for the reformation of the deed, for the purpose of enabling him to take advantage of the breach of such covenants. An action for reformation may be brought not only by the original parties but by their privies in title. 1 Story's Eq. Jur., § 165. This court held in *Bunnell* v. *Reed*, 21 Conn., 586, that an execution creditor, to whom land had been set off, could sustain an action against his debtor's grantor for the correction of the deed conveying such land to the debtor, so that it might be made to include the land levied upon, as was intended by the parties thereto, but which by mistake it failed to do.

We have thus disposed of all the questions which it is necessary to consider in order to decide the case before us. There is nothing in the record which shows any such laches on the part of the plaintiff, in pursuing his remedies after his eviction, as would defeat his right to invoke the assistance of a court of equity, and the majority of the court think there is error in the judgment appealed from, and that a new trial should be granted, at which the Court of Common Pleas may reform the deed as herein indicated, and thereupon render judgment for damages for the breach of the covenants now in said deed contained.

There is error and a new trial is granted.

In this opinion ANDREWS, C. J., and LOOMIS and TORRANCE, Js., concurred.

CARPENTER, J., (dissenting.) A mistake which justifies the interference of a court of equity, is defined by the civil code of New York as follows :—" Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in, 1st, an unconscious ignorance or forgetfulness of a fact past or present, material to the contract ; or, 2d, belief in the present existence of a thing material which does not exist, or in the past existence of such a thing which has not existed." This definition is endorsed by Mr. Pomeroy as " both accurate and comprehensive." 2 Pomeroy's Eq., § 839.

Again : " If a mistake is made by one or both parties in reference to some fact which, though connected with the transaction, is merely incidental, and not a part of the very subject matter or essential to any of its terms ; or if the complaining party fails to show that his conduct was in reality determined by it ; in either case the mistake will not be ground for any relief, affirmative or defensive." 2 Pomeroy's Eq., § 856.

I presume that it will be conceded that such is the law of this state. A court of equity will not stoop to correct an immaterial mistake. My first inquiry then is, was the mistake in this case a material one ? Did the parties sell and purchase because of their belief that the front line extended to the stake ? In other words does it distinctly appear that there would have been no sale had the parties known that the front line fell six and one half inches short of the stake ? There can be but one answer to all these questions, and that a negative one. The finding is ominously silent on this subject. Not only is an express finding of materiality wholly wanting, but there is nothing in the record from which it can be inferred. It will be remembered that the question is, not whether the triangular piece six and one half inches in front and running to a point one hundred feet back, is now important to the plaintiff after constructing his build-

ing partly thereon, but did Barnes and Riggs regard it as important in 1872 that the real corner should be at the stake ? There is no finding that they did and there can be no inference to that effect. Riggs purchased a piece of land with a frontage on the street of thirty-three feet. That quantity of land he received ; at least that must be presumed for our present purpose, as there is nothing in the case indicating that he did not. If therefore Riggs received all the land that he purchased, and all that he supposed that he was to receive, there is absolutely no ground on which it can be claimed that he purchased it because he thought the stake indicated the true corner, and that he would not have purchased had he known that the corner was six and one half inches further south. This alone I regard as a conclusive answer to the plaintiff's case.

The alleged mistake was not in drafting the deed. That instrument contained nothing which the parties intended it should not contain, and omitted nothing which they intended should be inserted. Had there been a material mistake of that description a court of equity might have corrected it by reforming the deed. But the deed as it stands describes the land which the grantor owned, and which was intended to be conveyed by it, correctly. True, there was a mistake, but it was *dehors* the deed. It was in locating one corner of the premises. Obviously such a mistake is not to be corrected by any change in the deed, especially a change which will make it include land which the grantor did not own, and the title to which cannot be affected by it. The plain common sense method of correcting such a mistake is to ascertain and correctly locate the premises. Then, if the grantee fails to get what he expects, and what he wants, his remedy is an application to set aside or cancel the deed and restore to him the consideration paid.

The change asked for will not effectuate the intention of the parties. It will inevitably lead to results not intended and not contemplated. The deed was intended to convey the land and only the land which the grantor owned. Changing it so as to include land which he did not own is futile.

It is said that by pointing out the stake as the corner the parties virtually agreed that the deed should so describe the land, and therefore that the parties intended to deed to the stake. True, in one sense, and not true in another. It clearly appears that they intended to bound the premises north by the O'Connor line. That was the primary and principal intention. The intention to deed to the stake was secondary and subordinate ; it was contingent upon the supposition that that was identical with the O'Connor line. Thus there were, so to speak, two intentions ; one absolute, to convey to the true line wherever that might be, and the other contingent, to convey to the stake, provided that indicated the true line. The absolute and only real intention has been effectuated by the deed as it is ; the contingent one, by reason of the failure of the contingency on which it depended, ceases to be of any consequence. An intention depending upon a contingency which does not exist, and which never can exist, is, in legal contemplation, no intention at all. Legally speaking then, there was but one intention, and that was to convey only the land which the grantor owned.

The court, as it seems to me, now attempts to give effect to what was a secondary and contingent intent, and which is now no intent at all—an impossible intent, by changing the deed so as to carry a mistake, made during the negotiations, into that instrument, when the parties themselves had consciously or unconsciously rectified the mistake in their deed. Thus such a mistake is unduly magnified as of more importance than the real agreement of the parties as truly expressed in their deed. Courts of equity do not reform deeds to give effect to mistakes. It is in effect enforcing an agreement founded in a mistake ; and the mistake is of such a character that a court of equity, were the circumstances slightly changed, would unhesitatingly annul the agreement. That is hardly reformation. Courts of equity do not reform written instruments to give effect to mistakes, or agreements resulting therefrom, but to rectify them in cases where injustice would otherwise be done.

Let us pursue this thought a little further. I take it that

it is a sound proposition that a court of equity will not lend its aid to give effect to an agreement founded in and resulting wholly from a mistake of fact, unless it clearly appears that the parties after having actual knowledge of the facts would have entered into or have ratified the agreement. Any substantial doubt on this point should lead the court to refuse its aid. How is it in this case? The mistake was not discovered until many years after the deed was given, and was not known with certainty until the determination of the case of *Root* v. *Butler*. Since then no contract has been made and none has been ratified. Indeed no such fact is claimed in the case, and the finding nowhere intimates that any such fact exists.

From what I have already said it will not escape the notice of the profession that this is not an ordinary case of a reformation of a written instrument. It is rather in the nature of an action for a specific performance. It is in fact an action to compel Barnes to perfect a defective or incomplete performance. The deed as it is embraces no land north of the O'Connor line. The object is to extend its operation beyond that line. The case therefore stands upon the same principle that it would if it was a suit to compel Barnes to give an independent deed of that strip of land. The circumstances and results may be different; but the essential principles upon which courts proceed are the same in the two cases. In either case the important questions are, has there been a valid agreement? and does justice now require that that agreement shall be performed? I need not repeat the arguments here. An agreement based upon a radical misconception of facts can rarely be a valid agreement. The non-existence of an assumed fact, the assumption being vital to the agreement, is an insuperable objection to a decree for a specific performance. Justice cannot require the performance of the agreement for two reasons: first, there is no valid existing agreement, and second, the agreement is of such a character that specific performance is impossible. These propositions will not be denied:—1st, that the agreement to convey to the stake was founded in the mistaken belief that

Barnes owned to the stake ; and 2nd, that any decree which the court may pass cannot possibly affect the title to the land. I cannot understand upon what principle, or for what purpose, a court of equity can now interfere, unless it is in some way to take into its jurisdiction the matter of damages. I had supposed that courts gave damages generally in such cases only as incidental to some distinctively equitable relief. Mr. Pomeroy, (3 Eq., § 1405,) says :—" The contract must be free from any fraud, misrepresentation even though not fraudulent, mistake or illegality." Again, in the same section :—" The contract must be such that its specific performance would not be nugatory. Although the contract by its terms can be specifically enforced, the defendant must also have the capacity and ability to perform it by obeying the decree of the court. It must be such that the court is able to make an efficient decree for its specific performance, and is able to enforce its decree when made." And in a note the author says :—" If the defendant is totally unable to perform because he has no title at all, or a title completely defective, the remedy will not be granted."

In vol. 1, § 237, the same author says :—" If a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief, such for example as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from facts disclosed on the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible of damages, the court then may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages." In a note to this section the author says :—" The following rules have been established by American decisions :—If through a failure of the vendor's title, or any other cause, a specific performance is really impossible, and the vendee was aware of the true condition of affairs before and at the time he

Butler *v.* Barnes.

brought his suit, the court, being of necessity obliged to re-fuse the remedy of specific performance, will not in general retain the suit and award compensatory damages, because, as has been said, the court never acquired jurisdiction over the cause for any purpose; citing cases. A second rule is, —that if the remedy of specific performance is possible at the commencement of the suit by the vendee, and while the action is pending the vendor renders this remedy impracti-cable by conveying the subject matter to a *bonâ fide* pur-chaser for value, the court, having acquired jurisdiction, will do full justice by decreeing full damages; citing cases. The third rule is as follows:—If specific perform-ance was originally possible, but before the commencement of the suit the vendor makes it impossible by a conveyance to a third person ; or if the disability existed at the very time of entering into the contract on account of a defect in the vendor's title or other similar reason ; in either of these cases, if the vendee brings his suit in good faith, without a knowledge of the existing disability, supposing, and having reason to suppose himself entitled to the equitable remedy of specific performance, and the impossibility is first dis-closed by the defendant's answer, or in the course of the hearing, then, although the court cannot grant a specific performance, it will retain the cause, assess the plaintiff's damages, and decree a pecuniary judgment in place of the purely equitable relief originally demanded. This rule is settled by an overwhelming preponderance of American au-thorities." Citing a large number of authorities. Among them were *Kempshall* v. *Stone*, 5 Johns. Ch., 193 ; *Morss* v. *Elmendorf*, 11 Paige, 278 ; *Milkman* v. *Ordway*, 106 Mass., 232 ; *Smith* v. *Kelley*, 56 Maine, 64 ; *Doan* v. *Mauzey*, 33 Ill., 227 ; *Gupton* v. *Gupton*, 47 Mo., 37 ; *McQueen* v. *Cho-teau's Heirs*, 20 id., 222. An examination of the authorities satisfies me that this is a case in which a court of equity ought not to grant the relief prayed for ; also, that the court hav-ing acquired no jurisdiction for granting equitable relief, cannot grant relief by giving pecuniary damages.

I do not think that the practice act has any application.

That act was not designed to give a remedy where none existed, but enables the plaintiff to unite legal and equitable remedies in the same action, where each is existing at the time and a complete cause of action in itself. It has long been a settled practice for a court of equity, where it has taken jurisdiction of a suit for equitable relief by way of a decree for specific performance or the reformation of a deed, to render judgment instead for the damages that the plaintiff would be entitled to if the specific relief sought had been granted. In doing this the court is not departing from its jurisdiction as a court of equity or assuming legal jurisdiction, but is simply exercising its own long established powers as a court of equity. The court therefore needed no aid from the practice act, and acquired no additional powers from it, so far as the present case is concerned. The case must therefore be adjudged wholly upon its merits as a suit in equity, and with reference solely to the rules of practice in equity.