## CLARK v. ROOTS.

REFORMATION OF CONTRACT: *Conveyance of land through mutual mistake.*

M. was the owner of a tract of land containing sixty acres, and sold fifteen acres of it to G. After the sale to G., the fifteen acres which he purchased were known as the " Godbold Land," and the forty-five acres which M. retained were known as the " Mask Place." A. having become the owner of the latter, attempted to convey it to C. by a general warranty deed, and by a mistake of the parties in copying from a deed which contained a description of the original tract, the " Mask Place " was described in A.'s deed by metes and bounds which also embraced the " Godbold Land," then in the actual possession of G. under a recorded deed. A. executed the deed to C. supposing it conveyed only the " Mask Place," containing forty-five acres, and C. accepted the deed with the same understanding. *Held:* That the mistake was such as to afford ground for equitable relief by reforming the deed to C., so as to convey to him all the land it describes except the " Godbold Land."

APPEAL from *Pulaski* Chancery Court.

D. W. CARROLL, Chancellor.

*Sol F. Clark*, for appellant.

The sole defence to this suit is that Clark did know, or should have known, that the Godbold tract should be excepted out of the deed, because Godbold was in possession and his deed on record, and Clark was bound to take notice. This is not the law. *Bispt. Eq.; sec.* 213.

If Adams & Roots made a mistake in selling lands they had no title to, even if Clark knew it, this is only ground to rescind the contract, not to reform it. *Rawle Cov. for Title*, 128-9; *Bispt. Eq. sec.* 191 *and notes.*

If there was any mistake at all, it was wholly on the part of Roots and Adams, and occurred through their extreme carelessness and negligence. Courts never correct a mistake which is the result of negligence. *Bispt. Eq., sec.* 191; 28 *N. Y. Eq.*, 306; 33 *Mich.*, 123; 12 *Cl. and Fin.*, 248, 286; 2 *De G. and J.*, 110; 8 *Ga.*, 546; *Kerr on Fraud and Mis.*, 407; 19 *Ark.*, 522; 14 *Id.*, 482; 12 *Wisc.*, 112.

Parol evidence is not admissable to contradict a deed, at law or in equity. 1 *McCord*, 258. Nor to show that part of the premises contained in the deed were intended to be excepted from the grant. 12 *Johns*, 427.

No such case of mutual mistake or fraud is made 'out, as a court of equity will relieve by *reforming* the deed. It was the duty of the court to either have *rescinded* the trade, or given judgment for Clark on the warranty. It is only in cases of *mutual* mistake, or mistake on one side and fraud on the other, that equity will reform a deed. *Bisph. Eq., secs.* 190, 191 *and notes; Rawle on Cov. for title*, 522-3-4; 12 *Wisc.*, 112.

*John McClure*, for apppellees.

1. The ground of relief in this case is, that plaintiff, in preparing the deed from defendants used words which con--

veyed land which they did not own or sell to him, and at the time of signing the deed they were led to believe were only intended to describe the property which they actually sold him.  60 *N. Y.*, 301.

The circumstances under which a deed was executed are admissable, 12 *Cal.*, 148 ; the situation of the parties and state of the thing granted at the time.  26 *Cal.*, 88 ; 15 Ill., 581 ; 3 *Mass.*, 352.  In such cases parol evidence, contemporaneous writings, and acts done under the contracts, may be admitted to interpret the deed.  46 *N. H.*, 83.

Where property has been conveyed through mistake by deed, which the parties never intended should be conveyed, which the grantor was under no legal obligation to convey and which the grantee could not in good conscience retain, a court of chancery will interfere and correct that mistake, whether it arose from a misapprehension of facts, or of the legal operation of the deed.

And this whether the mistake was *mutual,* or arose from a mistake on one side and fraud on the other. 121 *Mass.*, 23 ; 21 *Conn.*, 139; 2 *Dev. Eq.* (*N. C.*), 37 ; 46 *Me.*, 367 ; 9 *Ind.*, 127; 11 *Md.*, 492; 30 *Me.*, 289 ; 16 *Ga.*, 49 ; 54 *Wisc.*, 178; 28 *Id.*, 219; 44 *N. Y.*, 528; 75 *Id.*, 593; 87 *N. Y.*, 49.

SMITH, J.   In January 1883, Mr. Clark sold his plantation to John D. Adams, and took in part payment the Mask place, supposed to contain forty-five acres, at the price of $4,500.  Mask had at one time owned sixty acres; but as long ago as 1875 he had sold fifteen acres of the tract to Godbold, who thenceforward was in actual possession under a recorded deed.  After this last mentioned sale the forty-five acres which Mask retained were known in the neighborhood as the Mask place ; and the fifteen acres which had been sold off went by the name of the Godbold land. In 1876 Mask executed a deed of trust to L. W. Coy, as

trustee, for the better securing of the repayment of a loan of money. In this deed the premises are described as they stood before the sale to Godbold, but the area is specified to be forty-five acres. And in 1878 Mask executed to the same trustee another deed of trust, to secure a second loan. In the last mentioned deed the description is indefinite, the metes and bounds given not enclosing any specific parcel of land; but the Mask place, containing forty-five acres, was intended. At the sale for foreclosure of these trust deeds Roots bought. He afterwards sold and conveyed to Adams and Adams to Mr. Clark. In these conveyances the imperfect description, contained in Mask's second deed of trust, is repeated. Mr. Clark, becoming aware of the faulty description, called the attention of his vendor to the discrepancy. Adams and Roots, then, in November, 1883, without any new consideration received, but solely for the purpose of correcting the inaccurate description in the former deed, united in the execution of a deed to Mr. Clark. This last deed was prepared by Mr. Clark himself, and in it the description contained in Mask's first trust deed was copied; that is to say, the calls in the deed included the fifteen acres of Godbold. The description in the deed to Mr. Clark is as follows: "Beginning at the corner of J. A. Vaughn's land, in center of public road on the south side of the Arkansas river, and on a line between the Vaughn land and the land belonging to Robert Bertrand (now belonging to Field), thence south 19° west, twenty-three and 60-100 chains, thence south thirty-two and 49-100 chains, thence north 29° east forty-eight and 10-100 chains, thence north $48\frac{1}{2}$° west twelve chains, thence north 54° west eight chains, to point of begining, containing forty-five acres more or less, known as the Dr. Mask place." And the deed contained covenants of seisin, of freedom from incumbrances and of general warranty.

Clark v. Roots.

As soon as Mr Clark discovered that his deed purported to convey land of which Godbold was in possession, he brought his action at law against his grantors upon their covenants, assigning for breaches the paramount title of Godbold to the fifteen acres, and also the existence of sundry mortgages and judgments against Roots and Adams.

The defendants answered, denying that the said mortgages and judgments were subsisting liens upon the land. And, as no proof was offered on this branch of the case, we need not further advert to the breaches of the covenants against incumbrances.

Upon the main issue the defendants claimed that the description in the deed was erroneous, in that it included the fifteen acres; that they had never owned, nor undertaken to sell that parcel of land, nor had the plaintiff been misled into the belief that it was a part of his purchase; but, on the contrary, he had both actual and constructive notice that Godbold was the owner of that tract; that all the defendants sold and meant to convey was the forty-five acres that remained after Godbold's fifteen acres had been severed; that the description in the deed was by courses and distance and at such angles that it was impossible for the defendants, without the assistance of a surveyor, to say whether it comprehended sixty acres, or only the forty-five acres which the plaintiff bought; but they executed the deed in full confidence that the land was correctly described, whereas it, in fact, by the mutual mistake of the parties, included fifteen acres belonging to Godbold. They made their answer a cross-complaint, and prayed for a reformation of the deed, so as to conform to the intention of the parties, or, if this relief could not b had, for a perpetual injunction against the prosecution of this, or any similar action by the plaintiff.

On motion of the defendants the cause was transferred to the Pulaski chancery court.

Clark v. Roots.

In answer to the cross-complaint, the plaintiff denied that there was any mistake in the description. He had drawn the instrument as he was directed to do, and the draft was in the hands of Roots several weeks before its execution. He further denied that he purchased forty-five acres and no more, but alleges that he purchased all the land comprised within the metes and bounds specified in his deed, be the same more or less than forty-five acres. And he stated that the fifteen acres of Godbold constituted one-fourth in quantity and value of the property so purchased and conveyed.

REFORMA-
TION OF
CONTRACT:
Convey-
ance of land
through
mutual mis-
take.

The chancellor finds, specifically, that on the 4th of January, 1883, John D. Adams, by deed, attempted to convey the said "Mask Place," which he had purchased from Roots, to Sol F. Clark; that said last mentioned deed was prepared by the plaintiff, Sol F. Clark, and that there was a mistake in describing the lands intended to be conveyed, caused by said Clark copying the words used in the deed from Roots to Adams; that neither the said Adams or the said Clark, at the time of the delivery or acceptance of said deed, knew of said mistake; * * * * * that Adams executed the deed of January 4th, 1883, to said Clark, supposing he was conveying the "Mask Place," as it was then known and understood to contain forty-five acres, and that said Clark accepted the same, believing he was receiving a conveyance of the "Mask Place," as it was then known, containing forty-five acres.

He, therefore, denied any relief to the plaintiff, and upon the cross-bill of the defendants he reformed the deed so as to convey to Mr. Clark all the lands described in his deed, save and except the fifteen acres which Mask had in 1875 granted to Godbold. He ordered each party to pay the costs of his own depositions and the residue of the costs he divided equally between the plaintiff and defendants.

Did Adams agree to sell to Mr. Clark the fifteen acres

owned by Godbold? This is a question of fact rather than of law. The counsel for the defendants is very wide of the mark when he asserts that the determination of a fact by the chancellor is like the verdict of a jury, and not reviewable here. His findings are only persuasive. Nevertheless, we approve them in this case.

Adam's had never pretended to have any interest in Godbold's laud. And, as the proof tends to show that he was pecuniarily able to respond in damages for breach of his warranty, it is antecedently improbable, aside from considerations of honesty and good faith, that he would knowingly warrant the title to land with which he had no sort of connection. Such a fraud would soon be discovered and an action for damages would inevitably follow. Nor does it appear that any artifice or deception was practiced. In fact, Mr. Clark's own testimony does not show that he was deceived or misled in any particular. He is simply standing upon the letter of his bond. He inquired particularly about the area of land and was informed there were about forty-five acres. This was true, leaving out the Godbold land. He was, moreover, informed that the tract which Adams proposed to sell was leased to one Hobbs and in his possession. Now, Hobbs was never in possession of the fifteen acres in dispute; and a visit to the place, before the consummation of the trade, would have disclosed that fact, as a subsequent visit did disclose it. Hobbs knew tne lines, and could have shown them, and did afterwards point them out to Mr, Clark.

Moreover, the deed itself refers to the Dr. Mask place, containing forty-five acres, more or less. But the forty-five acres which were in the possession of Hobbs had been known by this designation ever since the sale of the fifteen acres to Godbold. If the conveyance had been of the Mask place, without a more particular description, it would have

carried the farm, as its boundaries existed, at the time the deed was made. *Madden v. Tucker*, 46 *Me.*, 367.

*Pugh v. Brittain*, 2 *Dev. Eq.*, *N. C.*, 37, is very similar to the case at bar. The deed described the land by metes and bounds and as containing 640 acres, known as "Briery Pocoson." Originally the tract contained more than 640 acres. One hundred acres had been sold off of " Briery Pocoson " to one Chamberland, who was in possession of it at the time of the sale; and had been for some years prior thereto. When the deed was made words were used, in the descriptive part, giving courses and distances, and these included the 100 acres previously sold to Chamberland. The deed described the tract as 640 acres. The grantee, as soon as he discovered that the descriptive words in the deed included the 100 acres sold to Chamberland, commenced an action upon the covenant for quiet enjoyment. A bill was filed by the grantor to enjoin the prosecution of the action at law, upon the ground that the deed did not, through a mistake, describe the land intended to be conveyed, or which had been sold.

The answer to the bill, was the argument indulged here —that the the plaintiff sold, and the defendant bought, by the title papers alone—that neither of the parties knew how much there was in the tract—that there was no mistake in the deed—that the defendant got and the plaintiff sold exactly what was intended, and further insisted, as is done here, that the contract could not be altered, but could only be rescinded.

A survey disclosed the fact that there were 721 acres in the tract known as the "Briery Pocoson," independent of the 100 acres sold to Chamberland; thereupon the court perpetually enjoined the prosecution of the action at law.

In *Wilcox v. Lucas*, 121 *Mass.*, 21, the supreme judicial

court of Massachusetts, speaking of a mutual mistake as to the true interpretation of a deed in the location of the premises, say: " This mistake did not depend upon the legal meaning of the words used, but upon the application of the description in the deed to the land, which involved a mere question of fact." [Citing *Chester Emery Co. v. Lucas,* 112 *Mass.,* 424; *Hoar v. Goulding,* 116 *Id.,* 132.] Continuing, the court said : " There can be no doubt of the power and duty of a court of chancery to restrict the operation of the deed to what was actually understood and intended by the parties, either by ordering the deed reformed, or by restraining the grantee from availing himself of it beyond mutual understanding." [Citing *Glass v. Hulbert,* 102 *Mass.,* 24; *Jones v. Clifford,* 3 *Ch. Div.,* 779.]

In *Stedwell v. Anderson,* 21 *Conn.,* 139, it was held : " Where property has been conveyed through mistake, by deed, which the parties never intended should be conveyed, which the grantor was under no legal obligation to convey, and which the grantee could not in good conscience retain, a court of chancery will interfere and correct that mistake, whether it arose from a misapprehension of facts, or of the legal operation of the deed."

In *Hileman v. Wright,* 9 *Ind.,* 127, the contention was, as here, that the mistake was not mutual, and, therefore, the contract could not be reformed, but only rescinded. But the court held that equity had jurisdiction to reform; or to restrain so much of the deed as went beyond the intention of the parties,

Mr. Clark's argument is, inasmuch as Roots and Adams had the deed in their possession for some time before they signed it, therefore they must have known the words of description used, and they are presumed to have known what land was included within the courses and distances given.

The same contention was made in the case of *Bush v.*

*Hicks*, 60 *N. Y.*, 301, and the court said: "It is claimed that the plaintiff knew the terms of the description inserted in the deed, and, as the language employed was that intended to be used, there was no mistake. The answer is, that the mistake consisted in supposing the description applied to the land intended to be conveyed, whereas it embraced much more, and a mutual mistake of this character is a ground for reforming a deed in equity.

Decree affirmed.

Opinion on motion to reconsider the judgment and to modify the opinion.

COCKRILL, C. J. We are satisfied that the judgment in this cause is right. It is based solely on a mutual mistake of fact unmixed with the imputation of fraud. Fraud in the transaction which begot the mistake was not charged in the pleadings; there was no evidence tending to prove it; no suggestion of it is made in the opinion, and none was intended. We do not think a modification of the opinion is necesstry to make this evident.

The motions are denied.