CASE 100.—ACTION BY W. J. COMBS AGAINST D. Y. COMBS.
—December 11.

# Combs v. Combs

Appeal from Perry Circuit Court.

L. D. LEWIS, Circuit Judge.

From the judgment, both parties appeal.—Affirmed on the cross-appeal and·reversed on original appeal.

1. Deeds — Showing Consideration — Burden of Proof. — Though, under Ky. St. 1903, section 472, providing that the consideration of any writing may be impeached or denied by a verified pleading, the consideration of a deed may be contradicted, the recital in the instrument as to the consideration is prima facie the true consideration, and one asserting that such recital is· incorrect on account of mistake or fraud must prove his assertion by clear and convincing evidence.

2. Evidence—Hearsay.—Testimony of a witness that he 'understood" from "some of the crowd'' and construed what he heard to be to the "effect," that a smaller amount than· that recited in a deed was the true consideration, was hearsay and inadmissible to vary the terms of the instrument.

3. Consideration — Evidence — Sufficiency. — In an action by a vendor against his vendee to recover the price of the land sold, evidence held insufficient to show that the true consideration was less than that expressed in the deed.

4. Descent and Distribution — Conveyances by Heirs — Property Conveyed.—A deed by an heir to his coheir, in which the property conveyed is described as· "all and singular his entire undivided one-fifth interest in all the real estate owned" by decedent, "embracing lands and town. lots in P. county, Ky, adjoining the. lands of J. A particular description of said property cannot now be given but embraces and includes all of said interest of party of the first part in said estate." Held that, since the deed could be made certain by reference to extraneous evidence, the maxim of equity, "that is certain

which can be made certain," applies, and the deed conveyed all the lands owned by decedent at his death, and not merely such as might be left after payment of decedent's debts, and the grantor was liable on his warranty for lands subjected by creditors of the estate to the payment of their claims.

5. Covenants — Warranty — Breach — Dower.—A widow's dower, being a mere life estate, is not an incumbrance on lands of a decedent, and the existence of such dower right is not a breach of covenant of warranty in a deed by an heir to a coheir conveying the grantor's interest in the lands owned by decedent at his death.

6. Title—Conveyance by Heir of Interest in Estate—Outstanding Title.—An outstanding superior title in a third person to lands of a decedent's estate, which title existed at the time of decedent's death, does not constitute a breach of a covenant of warranty in a deed executed by an heir of decedent to a coheir conveying all the interest of the grantors in the lands owned by decedent at the time of his death.

7. Garnishment—Operation and Effect—Effect as Between Defendant and Garnishee.—Where an heir conveyed his interest in decedent's estate to a coheir for an express consideration of $5,000, and a creditor of the grantor, having a claim for less than $2,600 garnished the grantee, and such grantee alleged in his answer as garnishee that he owed the grantor $2,600, being the balance of the consideration, $3,000, on which $400 had been paid, and judgment was rendered against him on his answer, such judgment did not estop the grantor from insisting that the true consideration was the amount recited in the deed, since the grantor and grantee were not adversaries in the garnishment action, and their rights under the deed was not an issue for determination therein, nor cou'd the grantor have controverted the disclosure conceding it to be false in stating the consideration too low.

W. C. EVERSOLE, WOOTON & MORGAN, HOGG & WILLIAMS and GREENE & VANWINKLE for appellant.

WM. CROMWELL, W. H. MILLER and P. T. WHEELER for appellee.

(No briefs—record out of office.)

Opinion of the Court by Chief Justice O'Rear—
Affirming.

Josiah H. Combs died intestate in September, 1894,
leaving an estate comprising several thousand acres
of land in Perry county and a number of town lots in
Hazard. He was survived by his widow and four
children, and the descendants of a fifth, who had died
in the lifetime of the intestate. Within a few days
after the death of J. H. Combs, his son, appellant W.
J. Combs, and appellee, D. Y. Combs, entered into an
agreement, in which the former sold his undivided
fifth interest in his father's real estate to the latter
for the recited consideration of $5,000, of which $400
was paid, and the balance was to be paid when the
land was divided among the heirs. A deed was then
executed between these parties, reciting that the con-
sideration was $5,000 paid. A written memorandum
evidencing the real transaction as stated above, signed
by both the parties, was executed simultaneously with
the deed and delivered to appellant. It was then be-
lieved that Josiah H. Combs' estate was not in debt.
W. J. Combs was the judgment debtor of Russell &
Co. for a sum in excess of $1,000. D. Y. Combs (appel-
lee) was then the sheriff of Perry county, and had in
his hands the execution on this judgment when J. H.
Combs died, and when he bought appellant's interest.
The execution was returned, in substance, no prop-
erty. Subsequently, Russell & Co. brought an action
on their judgment and return, seeking a discovery of
assets. D. Y. Combs was made a garnishee defend-
ant. He answered that he owed the defendant here
$2,600, being the balance of $3,000 purchase money
on the land conveyed to him, after deducting the

credit of $400. The circuit court adjudged a sale of
the land to pay the judgment of Russell & Co., and
some of it was sold for that purpose. A suit was
brought    also to settle the estate of J. H. Combs.
Various debts were presented and allowed against it
from time to time, and judgments were entered de-
creeing sales of enough lands to pay them. The liti-
gation was protracted through several years. Con-
siderable cost was created against the estate, which
was also satisfied by the sale of some of the lands.
Finally, what was left was partitioned among the
heirs, one-fifth to W. J. Combs for appellee, D. Y.
Combs, except that the part set aside to the widow as
dower was not partitioned among the heirs. There-
upon appellee brought this suit to enforce the pay-
ment of the balance of $4,600 then due upon the pur-
chase-money obligation executed by appellee. The
latter defended upon several grounds. One is that
the true consideration for the conveyance to him was
$3,000, instead of $5,000. Another, that the warranty
in his deed had been breached, in this: The loss to the
estate of the various tracts of land sold to pay J. H.
Combs' debts; and, further, the one-fifth in value of
several other tracts of land which had been adjudged
to strangers claiming same under superior and ad-
verse titles. It was also contended that the judg-
ment in the Russell & Co. case was an estoppel upon
apepllant as to the sum owing by appellee.

The actual consideration of a written obligation
may be shown, though it contradict the writing. Sec-
tion .72, Ky. Stats., 1903. But this does no mean
that the writing is to be ignored upon that point, and
the matter tried out alone by the parol testimony of
the witnesses. On the contrary, the rule is that the
writing is prima facie correct, in stating the consider-

Combs. v. Combs.

ation, and the burden of showing that it is not. is upon him who seeks to impeach it. It is regarded with favor just like other documentary evidence, and, to overcome it by parol evidence, the proof should be clear and convincing. - If it were otherwise, then no advantage would accrue to one who had taken the care and deliberation to engross the real transaction in a written memorial for the very purpose of relieving against misrecollection, or intended misstatement in the future. A writing would afford no protection, and would decline to the same value as a parol agreement, if that were not so. The law favors the diligent. It also favors writings as evidence in preference to parol testimony. It is recognized that what the parties set their hands to deliberately contemporaneously with the principal transaction was, because it was then fresh, more probably free from doubt, and, not having in view a litigation, would express the truth, and, if it had not, the parties would have then changed it to conform to the truth. After a great while men forget, and sometimes altered circumstances affect their views, and in consequence their testimony, while bias colors their statements. There is every consideration for favoring the written evidence made at the time in preference to the parol testimony of witnesses afterward given. Still, the old practice of holding certain writings, particularly when under seal, as conclusive as to the consideration, even shutting off an inquiry as to the truth, was found too harsh. Advantage was taken of the unsuspecting, and frauds perpetrated under the guise of a sanctity imparted by law to written deeds. To allow an escape from that rigorous rule, operating frequently with oppressive injustice, the Legislature has provided by the statute (section 472, supra) that

the consideration of any writing may be impeached or denied by pleading verified by oath; but this does not mean, and was never intended to mean, that a note for a specific sum of money might be shown by parol to have been for a less sum. Every written obligation imports a consideration, though one be not expressed; but, whether expressed or implied, it may be shown under the statute that there was none in fact, or that it was different from that expressed. But that is quite a different thing from denying the express engagement to pay so much money, or to do a specified act. The statute allows the consideration, not the engagement, to be shown to have been different. If it is intended to impeach the engagement, then that must must be done, as of old, upon the ground either that the writing was executed or procured through fraud or mutual mistake of the parties in failing to correctly set out the engagement. To sustain that plea, something more than slight preponderance in the parol evidence is required. It must be shown by clear, convincing evidence that the writing was obtained by the fraud of the party benefited, or by his fraud was made to express an undertaking different from the true one; or that by the mutual mistake of the parties it fails to express the real agreement. Any other rule baits uncertainty, and puts a premium upon litigious-ness and perjury. We have thus reviewed the principle and the statute in order to properly apply the evidence as to the true undertaking of appellee. The consideration for that undertaking is not in dispute. It was the conveyance to appellee by appellant of the latter's one-fifth interest in his father's estate. But it is the obligatory part of the paper that is assailed—appellee's express promise to pay a certain sum, to-wit, $5,000, at a time contingent, to-wit, upon the par-

tition of the estate. Appellee testified that the real transaction was that he was to pay only $3,000 for appellant's interest in the land, that they estimated the lands as worth $15,000, and that in drafting the deed and note it was erroneously assumed that three, instead of five, was the divisor; but he does not claim that he did not then know perfectly well that J. H. Combs had five children. Nor was it shown that the draftsman of the papers was ignorant of the number of children, or had in mind the wrong number. One other witness who was present when the paper was drawn, was introduced. On this point we quote his testimony: "The conversation in my presence was that the conveyance was only made to secure a $400 debt that Will Combs (appellant) owed D. Y. Combs. The consideration in the deed, as well as I remember, showed $5,000 to be paid; but the conversation was to the effect that $3,000 was to be paid. I do not know just who told me about this $3,000, nor how I got it. That was my understanding about it. Q. Did you hear Dave Combs or Will Combs in each other's presence say what the price to be paid for his interest was, if the transaction was completed? A. I don't remember just what was said about it. The impression I got that it was to be $3,000, but the documents showed $5,000." The witness did not state, and seems not to have remembered, who were present at the time. He added: "Me and Dave Combs and Will Combs and some others were in there, and I got it from some of the crowd.

It is not pretended in this suit, and does not seem to have been advanced at any time or by anybody, that the transaction was in reality a mortgage to secure a $400 debt. Nor was there any debt of $400, though it is true that W. J. owed D. Y. about $375,

and the balance of the $400 was then made up in cash paid. If the witness meant to say that the deed showed that $5,000 was to be paid in the future, he was mistaken, for the deed shows the consideration as $5,000 cash in hand paid. But, aside from that, this testimony, on which the judgment to be later noticed was doubtless predicated, fairly illustrates the mistakes to which a resort to late recollections and parol testimony is liable to lead. The witness does not pretend to assert that he heard either of these parties say to the other, or that they agreed finally—which is the exact test—that the sum to be paid was $3,000, or as to what it was. He "understood" from "some of the crowd," and construed what he there heard to be to the "effect," that $3,000 was the sum to be paid. This testimony must be condemned on at least two substantial grounds: It is hearsay only; it does not purport to give the statement of the persons to be charged or affected, but the witness' deduction or conclusion as to its effect. The only additional evidence relied on to impeach the writing sued on is that of Mr. Baker, the attorney who drafted the deed and obligation. He shows that he had but faint recollection of the transaction. When asked to state "if anything was said by plaintiff and defendant as to the value of the landed estate of J. H. Combs at that time," he answered: "My recollection is that they talked about it and agreed on it as being worth $15,000. That is my recollection. I have never seen the writings since, don't know what is in them, and don't know anything about that at all." He was then shown the writing, and was asked whether it expressed the consideration agreed upon by the parties. He answered: "It is, unless I made a mistake in it. I don't remember what the consideration was. I wrote this, but I don't

know whether I made a mistake or not." Appellee's statement is positive as to the alleged error. It is contradicted by appellant's, equally unequivocal. In addition several witnesses testified that appellee at various times had been heard to say, and admitted to appellee's wife in answer to a direct inquiry immediately after the deed was executed, that he was to pay $5,000 for the land. Then there stands the writings—not only one, but two. They are not overborne by the weight of the other evidence. The evidence is not clear, or convincing, or in any wise satisfactory that the signed documents are false as to the amount to be paid appellant for the land. Notwithstanding, the chancellor below adjudged the original sum agreed to be paid was $3,000 instead of $5,000. This we can account for only on the confused use of the term "consideration" so frequently cropping out in the record and argument where the consideration is assumed to be the sum to be paid. That was the consideration in the executed deed, but in D. Y. Combs' obligation to pay appellant $4,600 the consideration was the conveyance to the former of the latter's interest in the real estate descended to him from J. H. Combs. The judgment in the particular discussed was erroneous.

The deed between the parties containing the warranty, a breach of which is claimed as the basis for resisting in part the payment of the purchase-money obligation, contains this description of the property intended to be conveyed: "All and singular his entire undivided one-fifth interest in all the real estate owned by J. H. Combs, deceased, at the time of his death, embracing lands and town lots in Perry county, Kentucky, adjoining the lands of Jeremiah Combs, etc. A particular description of said property can not

now be given, but embraces and includes all of said interest of party of the first part in said estate, with terms of general warranty." Appellant's contention it; That he sold only such interest in his father's landed estate as he might have and as would be shown upon final settlement of the estate; that, as these lands descended to him. incumbered by the ancestor's debt, the subsequent sale of some of them to pay those debts was not the loss by him of such lands, but that it was equivalent to their sequestration for debt, or incumbrance by the intestate in his lifetime; and that appellant sold appellee only what the former finally got from the landed estate. An analysis of the writing convinces us that the intention was to sell a full fifth, undivided, of such lands as had descended from J. H. Combs—being an entire share which by operation of law was vested in appellant. The only thing uncertain in the instrument was the description of the property to pass by it. If it had contained a full and complete description by metes, bounds, and acreage, it could scarcely be argued that the loss by appellee of any part from any cause anterior to his deed would not have been a breach of the grantor's warranty. "That is certain which can be made certain," is one of the maxims of equity. The descriptive language of the deed says that a particular description can not then be given, but it clearly implies that the deed is intended to include the grantor's entire interest, which was before described as being one-fifth, in such real estate as the record showed, or as in fact was, the property of the decedent at the time of his death. By such reference and extraneous sources could the particular description be supplied, and when so supplied it will be treated as if set out in terms in the body of the deed. We conclude that, in so far as those lands

owned by the intestate at his death were lost to appellee because of the cost and debts allowed in the suit to settle the estate of J. H. Combs, there was a breach of the warranty, and to the extent of one-fifth of the value of the tracts sold for the debts and cost appellee was entitled to an abatement of the obligation sued on. The circuit court so adjudged.

As to the widow's dower, appellee will be entitled to the possession of one-fifth of it on her death.   There is no breach of warranty because he fails to get it now. Appellants inheritable interest in the real estate of his father was subject to the widow's dower; he took, not as against her, but he and she were joint tenants in the whole tract until partition and assignment of dower, much as he and the other heirs were.   His one-fifth is subject to her life estate in so much as might be allotted to her for dower, precisely as it was subject to the rights of his coparceners to have their shares allotted in severalty out of the whole, with due regard to value, etc.   The widow's dower is not an incumbrance against her late husband's lands; it is her own interest, had potentially before he died, her particular property after his death, which took nothing from what he had ever owned, and nothing from what descended to his children and other heirs at law. We think the circuit court was not in error in holding that, as to the dower, there was not a breach of appellant's warranty.

As to the land lost to strangers by virtue of the superior titles of the latter, we do not think appellant's warranty is broken.   He sold only such lands as J. H. Combs had title to.   As the records must have been looked to, then, to see what lands the title to was vested in J. H. Combs, they would have disclosed that, as to the particular tracts subsequently lost to

strangers, the title was not in J. H. Combs, but in others. Nor is it shown in this record that he ever claimed or had an appearance of title to those tracts. The circuit court adjudged that there was not a breach of warranty on account of their loss, and we concur.

The sum paid by appellee, or which was realized by the sale of so much of the land as was necessary to pay the Russell & Co. judgment, was also properly credited to him on the obligation in suit; but his plea of estoppel was not sustained. In the Russell & Co. suit appellee and appellant were not antagonists in interest. The former was only called upon to disclose so much of his indebtedness to the latter as would enable the creditor to coerce the collection of his judgment debt. It was immaterial whether appellee owed appellant $2,600 or $4,600, for if he owed as much as the plaintiff's debt, which was much less than $2,600, that was all that was necessary or pertinent to be shown. Appellant could not have controverted by pleading in that case, the answer of his co-defendant, no issue could have been formed by them on the matter, and the court would not have stepped aside to settle an entirely irrelevant dispute between the defendants as to a sum which was not involved in the cause of action sued upon. Nor did the judgment in the Russell & Co. suit purport to adjudge and settle the matter as between appellant and appellee. It is not a thing adjudicated. The issue now here was not tried and could not have been tried in the old case. One defendant is not bound by a false statement in the pleading of his co-defendant, which he neither admits on his own behalf nor has opportunity to traverse.

We conclude that the judgment should be affirmed on the cross-appeal, and reversed on the original ap-

peal, and it is remanded for the entry of a judgment in conformity herewith.