TENENBAUM *v*. GERARD B. LAMBERT COMPANY.

Opinion delivered October 20, 1919.

1. EVIDENCE—PAROL EVIDENCE—WRITTEN CONTRACT—PROOF OF FRAUD. —The rule prohibiting the admission of oral evidence to vary a written contract does not preclude the admission of such evidence to establish fraud in the making of such contract.

2. CONTRACTS—FRAUD—REFORMATION—SALE OF SCRAP IRON—ESTIMATED QUANTITY.—G. wrote T. a letter offering to sell him certain scrap iron. G. was operating a plantation, and wished to sell only the accumulation of scrap iron it had on hand. T.'s agent visited G. and estimated the scrap iron on hand to be fifty tons, and so advised G. The parties then entered into a written contract, whereby G. was to sell to T. fifty tons of scrap iron at a certain sum per ton. G. then shipped all the scrap iron at which T.'s agent had looked, to T., but it amounted to only thirteen and a half tons. T. refused to pay G. for the thirteen and a half tons, and sued G. for damages for breach of the contract. *Held*, the amount of the scrap iron having been erroneously estimated by T.'s agent, that G. was entitled to compensation for the iron shipped, but that T. could not recover from G. any damages for failure to ship more than thirteen and a half tons.

3. CONTRACTS—WRITING—PAROL EVIDENCE—PROOF OF FRAUD.—Where G. entered into a written contract with T., upon erroneous information furnished by T.'s agent, in an action by T. to recover damages for breach of the contract, G. may introduce parol testimony to explain the transaction and to escape liability.

Appeal from Phillips Chancery Court; *Edward D. Robertson,* Chancellor; affirmed.

*Ben F. Reinberger,* for appellant.

1. No fraud was proved, and there was no mutual mistake. The contract was in writing and oral testimony was not admissible to show that the parties intended to make a different contract. 78 Ark. 574; 80 *Id.* 505; 94 *Id.* 130; 13 *Id.* 573; 67 *Id.* 62; 78 *Id.* 574; 83 *Id.* 105; 86 *Id.* 162; 94 *Id.* 130; 95 *Id.* 131; 104 *Id.* 483.

2. The testimony fails to show that a mutual mistake was made. 102 Ark. 326. To reform a contract the proof must be full, clear and decisive; a mere preponderance is not enough. 91 Ark. 162; 111 *Id.* 205; 120 *Id.* 326; Bishop on Cont., § 708; 71 Ark. 617; 46 *Id.* 167. The mistake must be common to both parties, for nothing can be mutual except by consent. 75 Ark. 75; 81 *Id.* 420; 83 *Id.* 131; Enc. Pl. & Pr. 781; 12 Ga. 281; 69 Miss. 891; 89 Pac. 490; 71 Ark. 617; 104 *Id.* 484.

3. Defendant made the contract with full knowledge of all the facts. It had the iron in possession and knew its weight and value. After the value increased it can not disaffirm their written and binding obligation to plaintiff's loss and to their material gain. We purchased fifty tons and if defendant disposed of same or fails to deliver, we are entitled to recover for our loss sustained in purchasing like material to fill our contracts. 83 Ark. 309.

4. In chancery cases on appeal the case is tried *de novo* here. Where the evidence is conflicting but which must be clear, full and convincing, this court should reverse. 84 Ark. 349. No mistake was shown to reform the contract and defendant having failed to make a case, the decree should be reversed.

*Moore & Vineyard* for appellee.

1. Equity has jurisdiction to reform a written contract as here for mutual mistake or for mistake by one and fraud by the other party. 104 Ark. 483; 4 Pom. Eq. Jur., § 1376; 104 Ark. 483; 35 Cyc. 61; 98 Ark. 23.

2. Appellant has wholly fallen down on the question of proving damages, if he had made a valid contract for the purchase from appellee.

Upon a breach by vendee in a contract for a sale of goods, the measure of damages is the difference between the contract price fixed by the contract and the market value of the goods at the time and place of delivery, provided the contract price exceeds such market value. 92 Ark. 111; 121 *Id.* 50. There is no conflict in the evidence and the proof is full, clear and decisive in favor of the contention of appellee and the decree should be affirmed.

### STATEMENT OF FACTS.

A. Tenenbaum brought this suit in the circuit court against Gerhard B. Lambert Company to recover $540 damages which he alleges he has sustained by reason of a breach of a contract with the defendant to sell it approximately 50 tons of scrap iron.

The defendant answered, denying the allegations of the complaint, and by way of cross-complaint asked judgment against plaintiff for the price of 13½ tons of scrap iron which it shipped to the plaintiff and for which it has not been paid. The defendant prayed for a reformation of the contract of sale and asked that the case be transferred to the chancery court. Without objection, the case was transferred to equity and tried there.

The chancellor found for the defendant in the amount of its counterclaim. It was therefore decreed by the court that the complaint of the plaintiff be dismissed for want of equity and that the defendant have and recover of the plaintiff the sum of $149.37.

The case is here on appeal.

HART, J., (after stating the facts). The only issue raised by the appeal is as to the correctness of the finding of the chancellor.

According to the evidence adduced by the plaintiff, he has been engaged in the business of buying and selling scrap iron and hides at Little Rock, Arkansas, since the

year 1890. His son traveled for him over the State of Arkansas, buying scrap iron for him. He went to Elaine, Phillips County, Arkansas, and entered into a contract with the Gerhard B. Lambert Company, a corporation engaged in business there, for the purpose of buying scrap iron from it, and the contract is evidenced by a letter signed by the Gerhard B. Lambert Company and written to A. Tenenbaum, Little Rock, Arkansas, and dated May 5, 1917, Elaine, Arkansas. The letter is as follows:

"Dear Sir: We beg to confirm sale made to you through your representative, M. M. Tenenbaum, for approximately fifty gross tons of scrap iron, free of boilers, grates and stove plates, at $13.50, gross tons f. o. b. cars, Elaine approximately 50 tons of scrap iron and that the bill of lading attached, delivery to be made within two weeks. We beg to acknowledge receipt of your draft for $50 to apply on this shipment.

"Yours truly,"

The defendant shipped to the plaintiff one car of scrap iron within two weeks and notified the plaintiff that this was all the scrap iron that it had. The plaintiff received the car load of scrap iron, but refused to pay for it, claiming that the contract called for approximately 50 tons of scrap iron and that the defendant had only shipped to the plaintiff 13½ tons. The plaintiff claimed that he had contracts out for the sale of the scrap iron, and that in order to fill them he had to buy scrap iron at an advanced price from other parties and that he was damaged in the sum of $540 by the defendant not complying with its contract. It is also shown by the plaintiff that the defendant estimated that it had on hand at Elaine approximately 50 tons of scap iron and that the plaintiff bought that amount from it.

On the other hand, it was shown by the defendant that it was engaged in business at Elaine, Arkansas, and that on the 5th day of May, 1917, a son of the plaintiff called upon it to purchase the scrap iron which it had accumulated at its place of business. An agent of the

defendant showed Tenenbaum the iron which it had accumulated at Elaine and Tenenbaum estimated the amount to be between 40 and 50 tons. The plaintiff's agent was also told that the defendant had some more scrap iron at Lambrook on its plantation, eight miles away. The defendant was engaged in operating a cotton plantation of about 3,000 acres and also operated a store and gin on the premises. The defendant knew nothing as to the amount of scrap iron on hand and relied entirely upon the estimate made by Tenenbaum. The latter knew that the defendant was not engaged in the business of buying and selling scrap iron and that it only intended to sell the plaintiff the amount of scrap iron which it had on hand at Elaine and Lambrook. The contract in question was written by an agent of the defendant, but was dictated by the agent of plaintiff.

The above facts were testified to both by the bookkeeper and manager of the defendant.

(1) It is first insisted by counsel for the plaintiff that this testimony on the part of the defendant was inadmissible on the ground that it violated the well known rule that parol evidence is inadmissible to modify or vary a written contract. The facts bring this case within an exception to the rule. The rule prohibiting the admission of oral evidence to vary a written contract does not preclude the admission of such evidence to establish fraud in making the contract. This is so because fraud in a contract could never be proved if the parties were bound by its terms as written. *Brown* v. *LeMay,* 101 Ark. 95, and *Carwell* v. *Dennis,* 101 Ark. 603.

(2-3) In the case at bar two witnesses for the defendant testified in positive terms that it was engaged in running a plantation of 3,000 acres and in operating a store, mill, and gin situated thereon; that it only intended to sell the scrap iron which it had accumulated in the course of its business; that it was not engaged in the business of buying and selling scrap iron and that the plaintiff knew these facts and knew that the defendant relied upon his agent in estimating the quantity of scrap iron on hand.

The iron was to be delivered within two weeks. The defendant did deliver all the scrap iron it had on hand to the plaintiff within this time.

The chancellor correctly held that the action of the plaintiff in estimating the quantity of scrap iron in the contract at approximately 50 tons, when in fact there were only about 13½ tons, was a fraudulent misrepresentation which induced the defendant to sign the contract, as dictated by the plaintiff's agent. This view is strengthened by the fact that the defendant wrote the plaintiff a letter offering to sell him the scrap iron which it had on hand and the agent of the plaintiff went down there to buy it in response to this letter.

It follows that the decree will be affirmed.