CONLEY *v.* ARCHILLION.

Opinion delivered November 8, 1920.

1. VENDOR AND PURCHASER—PURCHASER'S ASSUMPTION OF VENDOR'S DEBT.—In an action on notes secured by a vendor's lien apparently satisfied of record, finding of the court that defendants as subvendees of the purchaser assumed payment of the note *held* not against the preponderance of the evidence.

2. LIMITATION OF ACTIONS—PAYMENT OF INTEREST.—Payment of interest on a note within the statutory period *held* to stop the running of the statute of limitations.

3. LIMITATION OF ACTIONS—ASSUMPTION OF PAYMENT.—Suit on land purchase notes was not barred where, within the statutory period, the land was conveyed by the purchaser and payment of the notes was assumed by the grantee.

4. VENDOR AND PURCHASER—LACHES.—A suit on land purchase notes, the payment of which was assumed by two brothers as grantees of the purchaser, was not barred by laches, because it was not commenced until after the death of one of such grantees, where the other brother was alive and presented his theory of the transaction, especially where suit was brought within the statutory period.

5. VENDOR AND PURCHASER—LIABILITY OF PURCHASER'S WIDOW AND HEIR.—The widow and heirs of a purchaser of land, who assumed payment of his grantor's purchase money notes secured by a vendor's lien on the land, are proper parties to a suit to enforce such lien, though they are not personally liable.

6. VENDOR AND PURCHASER—REFORMATION OF DEED.—In a suit to subject land to the payment of notes secured by a vendor's lien apparently satisfied of record, a deed by the purchaser to the defendants need not be reformed, so as to show that they assumed payment of the notes, since, if that was the agreement, it could be enforced without reforming their deed. ·

7. EVIDENCE—PAROL EVIDENCE TO EXPLAIN RECORD.—Cancellation of a vendor's lien on the margin of record was a mere receipt, and parol evidence was admissible to show that it had been entered because the purchase notes had been lost and might fall into the hands of persons who might attempt to collect them.

Appeal from Mississippi Chancery Court, Chickasawba District; *Archer Wheatley,* Chancellor; affirmed.

*J. T. Coston,* for appellants.

1. The note was barred by the statute of limitations.

2. It was error to render a personal decree against heirs. The claim should have been presented for allowance to the administrator of Robert Conley and it was error to sue the widow and heirs. 35 Ark. 292; 40 *Id.* 544; 39 *Id.* 79-80; 45 *Id.* 303.

3. The decree is against the great preponderance of the testimony and the claim is barred by laches. 123 S. W. 1046-7; 145 *Id.* 886; 142 *Id.* 158. It was not fair and it is unconscionable for the old lady to present her claim after the death of Robert Conley. 21 Ark. 202; 25 *Id.* 515.

4. It was error to decree a reformation of the deed from Mrs. Conley to Robert and Pete Conley. No fraud

or mistake were alleged, nor does the complaint ask reformation of said deed. Nor is the proof clear, unequivocal and decisive. 219 S. W. 328; 77 *Id.* 53; 131 *Id.* 701; 101 *Id.* 724; 131 *Id.* 452. The note is barred by limitation and laches and the decree is against the clear, preponderance of the testimony.

*W. D. Gravette,* for appellee.

The great weight of the evidence supports the findings of the chancellor and none of the notes were barred by limitation or laches. The decree really is too lenient to appellants. Appellee was not unreasonable nor unconscionable, as the evidence shows.

Smith, J. This suit was brought by appellee to collect two notes, for $500 each, dated September 14, 1910, and due in one and two years after date. The notes were originally executed by J. W. Conley to appellee, and were given in part payment of the purchase price of a certain eighty-acre tract of land, and were secured by a vendor's lien reserved in the deed. Appellee lost the notes, and they remained lost for several years. After discovering the loss of the notes appellee endorsed upon the margin of the deed record concellation and satisfaction of the notes there mentioned and secured. The testimony is in irreconcilable conflict as to the purpose for which this was done. Appellee testified that she thought the notes had been stolen, or that they might be found, and, if so, that Conley would be compelled to pay them. Conley is appellee's son. Conley testified that he had applied for a loan to the Southern Loan & Abstract Co., and to procure this loan it was required that he have the vendor's lien in his mother's favor canceled, and that it was done for that purpose. He testified that it was understood that the debt was not thereby extinguished. He further testified that his crop failed, and he was unable to meet his obligations, and on that account sold the land to his sons, Robert and Pete Conley, on December 29, 1915, for the consideration of $4,000, and that he had never made any payment to his mother of principal, but

had paid the interest on three or four occasions. That this consideration was represented by a cash payment of $500, the assumption of the mortgage indebtedness in favor of the loan company, and the agreement to pay appellee the thousand dollars purchase money due her. Robert Conley died February 17, 1916, and left surviving him a widow and several minor children, who were made parties to this suit.

Pete Conley testified that before buying the land he was assured by appellee that the land was clear—that she had satisfied the debt against it—and that he would not have bought the land but for this assurance. Jim Phillips, a tenant living on the land, substantially corroborated this testimony, as did also Eldorado Phillips, a granddaughter. Mrs. Maggie Ledbetter, the divorced wife of J. W. Conley, and the mother of Robert and Pete Conley, testified that she had repeatedly heard appellee say that the debt to her on the land was settled.

On the other hand, the testimony was to the effect that the land was worth more than $4,000 at the time J. W. Conley executed the deed to his sons, and the deed recites a consideration of $4,000 of which $1,500 was cash in hand paid. It is admitted that only $500 was paid in cash, but the explanation was offered that one Taylor had attempted to buy the land and had offered $3,000 for it, and it was desired to have it appear that $4,000 had been paid for the land.

The deed from Conley to his sons was prepared by J. A. Mott, the cashier of the People's Bank of Blytheville, who testified that in the preparation of the deed he heard the parties discuss the fact that J. W. Conley owed his mother a thousand dollars, and that the consideration of the deed was to be $4,000, and that in writing it he recited the consideration to be $4,000. The witness recognized the deed as the one prepared by him. Fay Mott, a brother of J. A. Mott, remembered the occasion when his brother prepared the deed, and, in response to a question as to what was said about the thousand dollars in the presence of the boys at that time, an-

swered: "Yes, sir, the old man here (J. W. Conley) owed one thousand dollars to the old lady (appellee), or some one, and they could pay it off if they wanted to," and, in response to the question, "Did you understand from their conversation that these boys understood he owed a thousand dollars to Mrs. Archillion?" answered, "They couldn't keep from knowing it. He said he owed a thousand dollars, I am sure he said a thousand dollars, against the land, but they knew he owed it. It seemed like the thousand dollars was for taking care of the children, or something like that." It thus appears that, while the witness was mistaken about the details, he was positive that a demand of a thousand dollars in favor of appellee was then asserted and conceded.

It was shown that appellee was eighty years old, and probably in her dotage, and certainly very litigious, and that she had several lawsuits with her children and with her grandchildren, all of which she had lost.

Without further reviewing the testimony, or attempting to reconcile it, it may be said that it does not appear that the finding of the court below is clearly against the preponderance of the evidence. The court found the fact to be that the deed from J. W. Conley to his sons was upon the consideration that they would assume and pay the thousand dollars which he owed appellee for purchase money, and it was ordered that the deed be reformed to recite that fact.

There was a judgment for the thousand dollars and interest from December 29, 1915, and time fixed for its payment, with directions to the commissioner there appointed to sell the land if payment was not made within the time limited, subject, however, to the lien of the loan company; and this appeal is from that decree.

It is insisted that one of the notes sued on was barred by the statute of limitations. But this is not true if the payments of interest were made as testified by Conley. Moreover, before the bar of the statute had fallen, the deed from J. W. Conley was executed, and, as found by the court, the assumption at that time of the

payment of the two notes furnished in part the consideration for the deed, and this suit was commenced July 1, 1917.

It is said the suit was barred by laches, inasmuch as it was not commenced until after the death of Robert Conley. But we do not agree with counsel in this contention. The other brother was still alive, and presented his theory of the transaction. Moreover, the suit was commenced before the bar of the statute of limitations had fallen.

It is insisted that the court erred in rendering personal judgment against the heirs of Robert Conley. But we do not understand this to be the effect of the decree. The widow and heirs of Robert Conley were proper parties in a proceeding to subject the land to the payment of the notes, and they are bound by the decree insofar as it directs the sale of their interest in the land for that purpose, but they are not otherwise liable for the debt.

It is unnecessary to determine whether the court should have decreed the reformation of the deed to make it recite an agreement on the part of Robert and Pete Conley to pay the thousand dollars. If there was such an agreement, it was proper to enforce it, and it was not necessary to actually reform the deed to award that relief. Cancellation of the lien from appellee to Conley on the margin of the record was, at most, a mere receipt, and no rule of evidence is offended against in permitting an explanation of that receipt. *Greer* v. *Laws*, 56 Ark. 35; *Real Estate Bank* v. *Rawdon*, 5 Ark. 558; *Cache Valley Lbr. Co.* v. *Culver Co.*, 93 Ark. 383.

Of course, if Robert and Pete Conley had been led to believe that the debt to appellee had been paid, or canceled, because of the satisfaction of record of the lien reserved in the deed, they would be protected on that account. But that is the point in the case, and the court found against their contention. The decree of the court is therefore affirmed.