WOOD v. WOOD.

4-7399                                        181 S. W. 2d 481

Opinion delivered June 26, 1944.

*D. H. Crawford,* for appellant.

*Agnes F. Ashby* and *J. H. Lookadoo,* for appellee.

ROBINS, J.   Appellant filed suit in the circuit court against appellees, who are his brothers and sisters, for a breach of covenant of warranty contained in a deed executed on February 14, 1923, by all of the appellees, except LeRoy Wood and Edgar Wood, who executed it at a later date.   By the deed mentioned appellees conveyed to appellant one hundred and sixty acres in Clark county, Arkansas, inherited by appellees and appellant from their father, W. T. Wood, who died intestate in 1913, seized and possessed of the land in question, part of which was his homestead, and leaving surviving him his widow, Frances Josephine Wood, and eight children. The suit was transferred to equity by the circuit court on its own motion.   No objection to the transfer has been raised.   The cause was heard by the chancery court on the pleadings and upon testimony taken in open court. The lower court rendered a decree, dismissing the complaint for want of equity, to reverse which decree this appeal is prosecuted.

The evidence reflects that after the death of W. T. Wood two of his sons, appellant Albert Wood and appellee Andrew J. Wood, continued to live on the farm

with their mother, and neither her dower nor her homestead was ever assigned.

Appellee, Andrew J. Wood, after the death of his father, bought the interests of several of his brothers and sisters in the land owned by their deceased father and received deeds from some of them, but these deeds were never recorded.

Appellant served as a soldier in the first World War, and then returned to the farm and continued farming operations with his brother, appellee Andrew J. Wood. Sometime in 1920, appellant bought the interest of Andrew J. Wood in the land. Appellee, Andrew J. Wood, moved away, and appellant remained on the land with his mother, Mrs. Frances Josephine Wood.

Appellant completed payment of the purchase money of the land in 1922, and in 1923 the deed herein involved was executed. In order to minimize the amount of recording fees the parties decided to destroy the deeds previously made by some of the brothers and sisters to appellee, Andrew J. Wood, and have these brothers and sisters join with appellee, Andrew J. Wood, in the execution of the deed directly to appellant, Albert Wood. The widow, Frances Josephine Wood, did not sell appellant her interest in the land and did not sign the deed, which was on a printed form, and purported to convey the entire interest in the land, described according to government subdivisions with the usual covenant of warranty.

After he obtained the deed from his brothers and sisters, appellant married and brought his wife to live on the land. The widow continued to live on the land with appellant and his wife for a short time, but on account of family discord it became impossible for her to live there longer, and in the spring of 1925 she removed from her home and thereafter lived with other members of her family. Appellant, after his mother moved away, sold timber from the land and his mother then brought suit against appellant and the vendee of the timber for the value of the timber, and recovered judgment for a

total of $1,388.59. *Wood* v. *Wood*, 203 Ark. 344, 157 S. W. 2d 36. Thereafter the instant suit was brought by appellant to recover from appellees the sum appellant was thus forced to pay his mother on account of this judgment, it being alleged by appellant that he had suffered damage in this amount as a result of the breach of covenant of warranty contained in the deed executed by appellees to him.

Appellant testified that he bought the entire interest in the land. The testimony of some of the appellees, however, was to the effect that the existence of their mother's interest in the land was discussed and recognized by all parties at the time the trade was made, and that appellant insisted that it was not necessary to wait until she died before the heirs conveyed their respective shares. One of them testified that while the deed was being signed the justice of the peace advised the parties that they could not beat their mother out of her dower; that appellant understood this and talked about it frequently. Another appellee testified: "I wasn't supposed to make a deed until after my mother died. All I ever sold was my interest." Two of the heirs testified that they understood they were selling the entire interest.

To reverse the decree of the lower court, which in effect held that appellees in reality only sold and intended to convey to appellant their respective shares as heirs of their father in the land, appellant urges that parol evidence to vary the contents of the deed was not admissible. The rule that parol evidence is ordinarily not admissible to vary or contradict the terms of a written instrument is well established. But it is equally well settled that a court of equity may look through the form of the contract and ascertain what the real transaction was, and may correct a mutual mistake made in the drafting of the contract so as to make the contract reflect the real intention of the parties at the time of the execution thereof. In doing this the court does not receive parol testimony to vary the contract, but to show what the contract really was and to permit the correction of mutual mistake made by the parties in committing the contract to writing.

In the case of *Clark* v. *Root,* 50 Ark. 179, 6 S. W. 728, 8 S. W. 569, suit had been brought in the lower court for breach of covenant of warranty to the title of certain land, and this court sustained the contention of the defendant that in equity the deed should be reformed so as to show that the land, the title of which had failed, was not sold or intended to be sold.

A somewhat similar situation was presented in the case of *Harton* v. *Durham,* 148 Ark. 655, 231 S. W. 193. There it appeared that Durham conveyed a certain tract to Harton by warranty deed, the land being described according to government subdivisions. It developed that Durham's deed to Harton described a certain tract to which Durham had no title, and Harton sued Durham for breach of warranty. Durham answered, moved to transfer to equity, and asked for reformation of his deed on the ground that by mutual mistake the tract referred to was included in his deed and that he did not sell or intend to convey and that Harton did not purchase it. The chancery court reformed the deed and dismissed Harton's suit for damage. This court affirmed the chancery court's decision.

Likewise, in the case of *Tenenbaum* v. *Gerard B. Lambert Company,* 140 Ark. 231, 215 S. W. 596, 8 A. L. R. 745, suit had been instituted by Tenenbaum for the nonperformance of a written contract for the sale of approximately fifty tons of scrap iron sold to him by the Gerard B. Lambert Company. The company had only delivered under this contract thirteen and one-half tons, and Tenenbaum sought damage for breach of the contract of sale. The case was transferred to chancery court and it was shown by the company that in reality it intended to sell only the scrap iron that it had on hand, which amounted to thirteen and one-half tons instead of fifty tons as stated in the contract. This contention was sustained by both courts, the contract was reformed in accordance with the contention of the company, and Tenenbaum's claim for damage was denied.

In the case of *Ingraham* v. *Baum,* 136 Ark. 101, 206 S. W. 67, it appeared that Mary Baum had executed a

deed conveying a two-ninths interest in certain land, when in fact she owned a three-ninths interest subject to the dower interest of her mother; and this court upheld the decree of the lower court in reforming the deed so as to show conveyance of the interest which she actually owned rather than the interest described in the deed.

The New York Court of Appeals in the case of *Bush* v. *Hicks,* 60 N. Y. 298, said: "It is claimed that the plaintiff knew the terms of the description inserted in the deed, and, as the language employed was that intended to be used, there was no mistake. The answer is, that the mistake consisted in supposing the description applied to the land intended to be conveyed, whereas it embraced much more, and a mutual mistake of this character is a ground for reforming a deed in equity."

The Supreme Judicial Court of Massachusetts, in dealing with a somewhat similar situation, in the case of *Wilcox* v. *Lucas,* 121 Mass. 21, said: "This mistake did not depend upon the legal meaning of the words used, but upon the application of the description in the deed to the land, which involved a mere question of fact. . . . There can be no doubt of the power and duty of a court of chancery to restrict the operation of the deed to what was actually understood and intended by the parties, either by ordering the deed reformed, or by restraining the grantee from availing himself of it beyond mutual understanding."

In the case of *Combs* v. *Combs,* 130 Ky. 827, 114 S. W. 334 the Court of Appeals of Kentucky had under consideration the question of breach of covenant of warranty in a deed executed by one brother to another for the grantor's interest in the lands of the deceased father of grantor and grantee. The deed involved showed a conveyance by the grantor of "his entire undivided one-fifth interest in all the real estate owned" by J. H. Combs, "deceased . . ." The deed contained general terms of warranty. Breach of warranty was asserted because certain tracts of land owned by J. H. Combs at the time of his death had to be sold to discharge claims against the intestate's

estate, and part of it was set aside to J. II. Comb's widow as her dower. The court held that there was no breach of the warranty in the deed, summarizing its conclusion thus: "An analysis of the writing convinces us that the intention was to sell a full fifth, undivided, of such lands as had descended from J. H. Combs—being an entire share which by operation of law was vested in appellant."

This statement of the law is made in 21 C. J. S., Covenants, § 38, p. 908: "It has also been held that where by mistake land was included in a deed which the grantor did not own, and which the grantee did not intend to buy, such fact was an equitable defense to an action for a breach of the covenant of warranty in the deed."

The lower court's decree was necessarily based on a finding that there was a mutual mistake when the appellees executed and the appellant accepted from them a deed conveying an interest in the land—the dower and homestead interest of the widow—which they did not own. While the appellant's knowledge of this outstanding interest in the land which he was buying was not in itself sufficient to bar appellant in a suit on the covenant of warranty in the deed, it was a strong circumstance to support the chancellor's finding that appellant did not in fact buy this interest from appellees. "Such knowledge (knowledge by grantee of a defect in title) may be considered, however, in determining whether it was intended that the covenant should extend to such defect." 21 C. J. S. 908. Other circumstances reflected by the testimony tended to show that under the real contract between the parties appellant bought and appellees sold only their interests and shares, as heirs of their father, in the land described in the deed. If this was the actual contract between the parties, then a mutual mistake, such as equity should correct, was made in the execution of a deed purporting to convey an interest in the land that appellant did not intend to purchase and appellees did not own or intend to convey.

The lower court's finding on this question of fact not being against the weight of the testimony, it must be affirmed. It is so ordered.

McFADDIN, J., dissenting. The opinion of the majority is based on the assumption that appellees were entitled to have their deed to appellant reformed so as to describe the interest that appellees now claim they actually intended to convey. I respectfully dissent from the majority for the reasons herein set forth and discussed.

## I. *The Appellees Did Not Plead Facts Sufficient To Make A Case For Reformation.*

Appellant sued for damages for breach of covenant of warranty. In the original answer appellees (1) made a general denial, and (2) claimed that appellant knew that appellees were only selling their interest in the land. In their first amendment, appellees pleaded no consideration paid them for the deed. In their second amendment, appellees pleaded duress. In all of these pleadings, appellees prayed "that plaintiff take nothing for judgment . . . and for costs . . . and for all-other relief." Thus there were no *facts* pleaded that made a case for reformation. In *Bray* v. *Woodley,* 162 Ark. 186, 258 S. W. 119, we refused reformation where we said, of similar language, that it was no more than a legal conclusion and was insufficient to justify reformation.

Even if it be said, that under the authority of *Conley* v. *Archillion,* 146 Ark. 64, 225 S. W. 5, and *Realty Investment Co.* v. *Higgins,* 192 Ark. 423, 91 S. W. 2d 1030, and 45 Am. Jur. 590, reformation need not be specifically *prayed,* still, under all the authorities, the *facts,* to make a case for reformation, must be pleaded. See annotation in 66 A. L. R. 791 where it is said: "The rule seems to be settled that the party relying upon a contract different from the terms of the written instrument sued on must plead facts entitling him to a reformation of the instrument." It is significant that in every case cited in the majority opinion herein, the facts for reformation were pleaded, and reformation was specifically prayed. In the

case at bar, appellees did not plead facts sufficient to make a case for reformation.

II. *Appellees Did Not Produce the Quantum of Proof Necessary to Justify a Decree of Reformation.*

In numerous cases, seeking reformation, we have held that mere preponderance of the evidence will not justify a decree of reformation; and that the evidence for reformation must be "clear, unequivocal, and decisive." *Cherry* v. *Brizzolara,* 89 Ark. 309, 116 S. W. 668, 21 L. R., N. S. 508; and see the score of cases cited to the same effect in West's Arkansas Digest "Reformation of Instruments," § 45 (1). Such is also the general rule. 45 Am. Jur. 652, and 53 C. J. 1030. Thus to defeat the suit for breach of covenant of warranty appellees had the burden of establishing reformation by evidence "clear, unequivocal, and decisive."

Here is the sum total of the evidence of both sides on reformation: Mrs. Mary Crowley, Andrew J. Wood, and Le Roy Wood testified they were only selling their interest in the land when they signed the deed. Albert Wood testified that he was getting the entire interest just as the deed stated. Edgar Wood and Mrs. Katie Cox testified that they were selling the entire title and they did not deny liability for the breach of the covenant of warranty. Roy Thompson, a disinterested witness, testified that he had heard Mrs. Mary Crowley say that in selling the land to Albert Wood they sold the entire title. Dan Smith testified that Albert Wood paid, as consideration for the land, all that the entire title was worth.

Thus, as to reformation: the grantee, Albert Wood, and two of the grantors, (Edgar Wood and Mrs. Katie Cox), testified that the deed was intended to convey the entire title. On the other hand three of the grantors, (Mrs. Mary Crowley, Andrew J. Wood, and Le Roy Wood), testified that the deed was intended to convey less than the entire title; but one of these grantors, (Mrs. Mary Crowley), was contradicted by a disinterested witness, (Roy Thompson). Finally, Dan Smith testified that the grantee paid a price which, at the time of

the conveyance, was a fair price for the entire title. With the record in this shape it seems clear to me that the appellees did not produce the *quantum* of proof necessary to justify a decree for reformation.

Therefore, for the reasons herein stated, I respectfully dissent from the majority.